Bernard J. HERSH, Appellant,

v.

H. Jim HENDLEY, Appellee.

No. 18577.

Court of Appeals of Texas,
Fort Worth.

Dec. 16, 1981.

Cowles, Sorrells, Patterson & Thompson and R. Brent Cooper, Dallas, for appellant.

Robert W. Hartson, Dallas, for appellee.

Before HUGHES, JORDAN and RICHARD L. BROWN, JJ.

## OPINION

HUGHES, Justice.

Dr. Bernard J. Hersh has appealed the judgment against him in a medical malpractice case instituted by H. Jim Hendley. The case was tried before a jury and submitted on special issues. The jury found favorably for Hendley and awarded him $59,500.00 in damages. Hersh has appealed the judgment rendered on the verdict.

We reverse and remand for retrial.

Before 1973 Hendley had experienced circulatory problems and a light stroke. He had been prescribed anticoagulants but discontinued taking them a few months before seeing Hersh for treatment. The ailment about which Hendley complained to Hersh was a callus he had had on his foot for two years. Two other doctors had treated the callus by trimming and injecting it but were unsuccessful.

Hendley first saw Hersh on November 15, 1973 at which time Hersh examined Hendley's foot, trimmed the callus and suggested surgery. On November 26, 1973, the date of Hendley's third visit to Hersh's office, Hersh performed surgery on the third metatarsal of Hendley's left foot. Hersh did not ascertain Hendley's medical history before performing the surgery. Following the surgery Hendley complained to Hersh of pain and discoloration around the incision site. The callus returned.

Hendley was last seen by Hersh on February 28, 1974. In June 1974 a Dr. Adami removed a fatty mass from Hendley's buttock. Hendley attempted to see Hersh again about his continued pain and discoloration but was told by his general physician,

who had shared an office building with Hersh, that Hersh had relocated. Hendley's general physician examined the foot and referred him to Dr. Steiner, an orthopedic.

Dr. Steiner saw Hendley twice between August 28, 1974 and September 12, 1974. On these dates Dr. Steiner saw no indication of circulatory problems, thrombophlebitis, deep veinous thrombosis or bone infection. Dr. Steiner first prescribed an antibiotic in treating an arthritic condition in Hendley's foot. On September 12, 1974 he injected what he suspected was a "Morton's neuroma" in the proximity of the previous surgical site.

On September 17, 1974 Hendley experienced chest pains and was admitted to the hospital under the care of a Dr. McCormick, an internist. Hendley was examined and diagnosed as having a pulmonary embolism (a blood clot in his lung). Hendley was thereafter released but was readmitted on December 1, 1974 having suffered a second pulmonary embolism.

Hendley continued under the treatment of Dr. Steiner for pain he experienced in his foot. While still under the general care of Dr. McCormick, Hendley underwent surgery by Dr. Steiner on April 17, 1975 at which time Dr. Steiner fused the area where Hersh had previously operated. Following Dr. Steiner's surgery Hendley experienced no more pain in his foot; however, on December 4, 1975, Hendley was readmitted to the hospital and was diagnosed as having another pulmonary embolism.

Hendley instituted this suit seeking recovery in regard to two alleged injuries: (1) the pain in his foot following surgery and (2) the development of the pulmonary embolism which was diagnosed around September 17, 1974. These injuries were alleged to have been proximately caused by Hersh's negligence in that he held himself out as a licensed podiatrist, fully aware and knowledgeable of the standards of care of the medical profession and, more specifically, that he failed to meet such standards of care in that:

A. He failed to advise himself of the state of Hendley's preexisting medical condition prior to said operation;

B. He attempted to perform an operation at a time when he had not had adequate medical training to undertake said operation;

C. He attempted to perform an operation at a time when he knew or should have known that it was not necessary to perform said operation;

D. He attempted to perform an operation without trying to reconcile the problem with:

1. Medication
2. Physical therapy
3. Corrective shoe construction
4. Trimming the complained of callus

E. He discharged Hendley before he had obtained complete recovery;

F. He did not perform proper pre-operative and post-operative care in order to prevent the resulting pulmonary embolism in that he failed to:

1. Prescribe medication calculated to prevent the formation of an embolism;
2. Prescribe exercises for the left leg and left foot calculated to insure proper blood flow through the blood vessels of the left foot and left leg;
3. Test and document the flow of blood through the vessels of the left foot.

G. He failed to check and document vital signs prior to said operation.

Hersh answered, generally and specifically denying that he was negligent in any way. He also answered by alleging that Hendley's alleged injuries were not caused by the surgery but by some other cause(s) new and independent from the surgery performed by Hersh.

The case went to trial and at the close of the evidence Hersh made numerous requests and objections pertaining to the court's charge to the jury. Upon the return of the jury's favorable findings for Hendley, Hersh filed a "Motion for Judgment Non Obstante Veredicto And/Or to Disregard Special Issue Jury Findings". This

motion was denied and judgment was rendered for Hersh on the verdict. Thereafter a motion for new trial was filed which was also denied.

Hersh's seventh and eighth points of error assert that Hendley's expert witnesses were incompetent to establish the standard of care applicable to podiatrists under the same or similar circumstances. Thus, it is claimed that Hendley failed to satisfy the requirement that he introduce evidence, through a medical expert, of a standard by which the jury could fairly determine the negligence, if any, of the defendant, Hersh.

■ The general rule as to the establishment of a standard of care in a medical malpractice suit is stated in *Bowles v. Bourdon*, 148 Tex. 1, 219 S.W.2d 779, 782 (1949):

"It is definitely settled with us that a patient has no cause of action against his doctor for malpractice, either in diagnosis or recognized treatment, unless he proves *by a doctor of the same school of practice* as the defendant: (1) that the diagnosis or treatment complained of was such as to constitute negligence and (2) that it was a proximate cause of the patient's injuries." (Emphasis supplied.)

In the context of medical malpractice suits, the requirement that the testifying doctor be of the same school of practice was qualified in *Porter v. Puryear*, 153 Tex. 82, 262 S.W.2d 933, 936 (1953) by the recognition of the competency of an expert medical witness to testify to the standard of care "[w]here the particular subject of inquiry is common to and equally recognized and developed in all fields of practice." In applying this qualification the courts have held that a witness is competent to testify if he "has practical knowledge of what is usually and customarily done by a practitioner under circumstances similar to those which confronted the practitioner charged with malpractice, . . . ." *Simpson v. Glenn*, 537 S.W.2d 114, 117 (Tex.Civ.App.—Amarillo 1976, writ ref'd n. r. e.).

Hersh is a non-medical doctor podiatrist who was trained in schools of podiatry. Hendley produced two medical doctors through whom it was intended that standard of care be established.

Hendley called Dr. McCormick who testified that he was an internist and that he dealt primarily with non-surgical conditions. However, he further testified that he was familiar with the proper standards of care as a medical practitioner concerning care that should be given a surgery candidate before and after an operation in an effort to prevent thrombophlebitis and pulmonary embolism. He testified that such standards are common to and equally recognized in all fields of medical practice. Dr. McCormick went on to testify that failure to obtain a medical history of a patient; failure to document the medical history of a patient; performing surgery outside one's limitations; performing an unnecessary operation; discontinuing a patient who complains of pain; failure to test the flow of blood in a patient's foot prior to surgery thereon; failure to check a patient's vital signs; and performance of an operation in an unsterile office were all deviations from the acceptable standards of medical care.

Hendley also called Dr. Steiner, an orthopedic surgeon whose specialty involves surgery upon bones, muscles, ligaments and joints in the human body including the human foot. He testified that he was familiar with the fact that podiatrists concerned themselves with the bones, muscles and ligaments of the human foot, and that the standard of care for providing orthopedic surgery or podiatric surgery was common throughout the medical profession. However, he also stated that he is not familiar with the kind of practice or training received by podiatrists and that he is not aware of all that they do. Further, he testified that he does not do the particular type of surgery which was performed by Hersh. He went on to testify that failure to obtain a medical history on a surgery candidate; failure to document that medical history; performance of an unnecessary operation; failure to check a patient's vital signs before and after an operation; failure to document those vital signs; and performance of bone surgery on a patient's foot under less than sterile conditions were

all deviations from the acceptable standards of medical care.

Hersh testified that he was familiar with the general practice of podiatric surgery. He testified that: the procedures he followed in obtaining sterility in his office were no different from those used in the podiatric field; based upon the symptoms presented and the pain that the patient was enduring, and Hendley's desire to have it taken care of, it would be standard practice to go ahead and do the surgery; the surgical procedure he performed is a recognized and accepted procedure in the podiatric practice; it is standard podiatric practice to perform podiatric surgery in an office.

 It is thus apparent that a standard of care was established as to virtually all the acts of negligence pleaded by Hendley. The law in Texas is that a defendant physician's own testimony is sufficient to establish the applicable standard of care. *Wilson v. Scott,* 412 S.W.2d 299 (Tex.1967); *Smith v. Guthrie,* 557 S.W.2d 163 (Tex.Civ.App.—Fort Worth 1977, writ ref'd n. r. e.). Here, Hersh himself established a standard of care in regard to acceptable medical practice in the school of podiatry (necessity of surgery, etc.). As to the remaining allegations regarding acts of negligence it is apparent to us that a standard of care was sufficiently established in that these acts related to practices which are commonly and equally recognized in all fields of practice (taking a medical history, discharge before complete recovery, etc.).

We hold that the standard of care was established and overrule points of error seven and eight.

 Hersh has asserted several points of error relating to the trial court's submission of special issue number one which reads as follows:

"Whose negligence, if any, do you find from a preponderance of the evidence proximately caused the incident made the basis of this suit?

"(a) Bernard J. Hersh

"(b) H. Jim Hendley

"INSTRUCTION: In the above question one, you are hereby instructed that you may find one or more of the parties listed in question one to be negligent, if any, in whole or in part."

In Hersh's fourth point of error it is asserted that the trial court committed error in not providing the jury an option to find that neither party was negligent in its answer to special issue number one. We disagree. We note particularly the insertion of the qualifying verbiage, "if any", in both special issue number one and its accompanying instruction. The usage of such qualifying language distinguishes this case from Hersh's cited case, *Herrera v. Balmorhea Feeders, Inc.,* 539 S.W.2d 84 (Tex.Civ. App.—El Paso 1976, writ ref'd n. r. e.) wherein the special issue under attack read as follows:

"Which of the following parties or both from a preponderance of the evidence committed an act of negligence on the occasion in question which was a proximate cause of the accident in question."

In *Herrera* it was held that the above instruction presumed negligence. We do not disagree. However, we hold that here special issue number one does not presume negligence nor does it compel a finding of negligence by the jury. We overrule the fourth point of error.

 It is Hersh's third point of error that the trial court erred in failing to limit the jury's consideration to those acts of negligence pleaded and proved by Hendley. His contention is that there was a pleading variance at trial in that evidence as to Hersh having performed the surgery in unsterile conditions and also evidence as to Hersh's having operated on the wrong metatarsal was unsupported by pleadings.

We are not unmindful of the holding in *Scott v. Atchison, T. & S. F. R. Co.,* 572 S.W.2d 273, 277 (Tex.1978) that "when one or more pleaded acts or omissions are unsupported by evidence and the record contains evidence of other possible negligent acts or omissions which were not pleaded, failure to limit the broad ultimate fact issue to acts or omissions which were raised by

both pleadings and proof violates Rule 277 and is error." However, for the reasons stated below, we hold that the manner of submission in this case does not violate the restrictions set out in *Scott.*

As to the evidence regarding Hersh's having operated on the wrong metatarsal it is undisputed that the medical expert who testified to such error unequivocally retracted this testimony after having conducted further study on the matter. Therefore, any evidence which may have caused a pleading variance in this regard was expressly and intentionally negated by the testifying witness.

In regard to the alleged pleading variance relating to the insterility of the conditions in which Hersh performed the operation we note that at trial Hersh objected to special issue number one on the ground that "[t]here is no pleadings to support a general submission of negligence. There is no evidence to—of any negligence on the part of Defendant, Bernard J. Hersh." He also objected to special issue number one on the ground that "it is a general charge."

■ In *Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931 (Tex.1980), the Supreme Court explained its holding in *Scott, supra,* by stating that a broad special issue submission would not be reversed simply because one or more acts which allegedly contributed to an injury was not particularly pleaded and proved. More importantly, however, the court pointed out that if there is a variance between the pleadings and proof, "the distinct and specific variance or other defect must be stated in the objection or it is waived." *Brown v. American Transfer & Storage Co.*, supra, at 938, citing Tex.R.Civ.P. 274. Here, the objection made by Hersh is much too general and for this reason the objection is waived. The third point of error is overruled.

■ Hersh's fifth point of error is that the trial court erred in combining in special issue number one the issues of negligence and proximate cause. We find no proffered objection in this regard except that special issue number one constituted a general charge. Hersh now complains, for the first time, that the submission of the issue was error because (a) the issue combined two controlling and ultimate issues; (b) Hersh is prevented from effectively challenging the jury's findings on appeal; and (c) the issue is prejudicially multifarious or general.

Tex.R.Civ.P. 277 provides that it is not objectionable that a question is general or includes a combination of elements or issues. The means of submission is within the discretion of the trial court. The reason for allowing general or broad submission is to "halt the complex and artificial proliferation of narrow special issues." *Scott v. Atchison, T. & S. F. R. Co.,* supra, at 278.

The shortcomings as to the manner in which the negligence and proximate cause were submitted in this case are inherent especially in view of the fact that several acts of negligence were plead. However, since the trial objection proffered by Hersh did not specify the grounds which are for the first time raised in this appeal we are precluded from specifically addressing the possible prejudice which may or may not have been caused by the trial court's manner of submission. Any complaint to an issue is waived unless specifically objected to. Tex.R.Civ.P. 274. We overrule the fifth point of error.

■ By his second point of error Hersh asserts that the trial court erred in submitting special issue number one because the use of the word "incident" therein makes the issue confusing and ambiguous in that it was not clear as to whether the issue was referring to the pain following the surgery or to the development of the pulmonary embolism. Thus, he argues, if the jury found him to have been negligent in only one respect, he would nonetheless be found liable for all of Hendley's damages even though most of the damages were not proximately caused by any negligence on his part.

Again, Hersh is attacking the means of broad special issue submission which is permissible under Rule 277. He cites the case of *South Austin Drive-In Theatre v. Thomison,* 421 S.W.2d 933 (Tex.Civ.App.—Austin

1967, writ ref'd n. r. e.) in support of his proposition that broad submission under the facts of this case was confusing. However, Thomison is distinguishable in that even though different acts of negligence were involved the true problem addressed therein was the presence of more than one defendant each of whom needed to be proven negligent in order for the plaintiff to recover under his theory of the case. Here, we have only one defendant whose alleged negligence allegedly resulted in two separate and distinct injuries. Recovery here could have been had by Hendley based on either of the two alleged injuries.

█ As to Hersh's concern that he could have been held liable for damages even though most of the damages were not proximately caused by any negligence on his part, we refer to the damage issue itself (special issue number five) which limits the jury's consideration to "damage or harm ... *proximately caused* by the occurrence in question." (Emphasis supplied.) Considering special issue number five in conjunction with special issue one we hold that the jury could only have awarded damages in regard to the specific injuries which were proximately caused by the negligence of Hersh, if any. We overrule the second point of error.

In summary, we find no error in the submission of special issue number one.

█ In his first point of error Hersh asserts that the trial court erred in refusing to submit his requested instruction on new and independent cause. "Where there is pleading and evidence raising the issue of new and independent cause the trial court's definition of proximate cause must include the element of new and independent cause and that the phrase 'new and independent cause' must itself be defined." *Dallas Railway & Terminal Co. v. Bailey*, 151 Tex. 359, 250 S.W.2d 379, 384 (1952). Although *Bailey* was decided before the 1973 amendments to the rules of civil procedure, the same principles are applicable. The question before us is whether Hersh introduced sufficient evidence to support the requested instruction.

█ The fact that this is a medical malpractice case is critical because, in order to prevent the jury from merely guessing at possible causes, there must be expert testimony as to *probable* causes of the injuries. *Insurance Company of North America v. Myers*, 411 S.W.2d 710 (Tex.1966). At trial the experts went no further than to testify that certain intervening events *could have* caused a pulmonary embolism. Such equivocal testimony was insufficient to warrant an instruction on new and independent cause because the jury would have been left to surmise and conjecture in its deliberations on the controlling issue of proximate causation. We overrule the first point of error.

█ Hersh's sixth point of error is that the trial court erred in refusing to submit this instruction:

"You are instructed that an unexpected result, bad result, unexpected subsequent condition or any other circumstances or condition showing merely a lack of success is not evidence of negligence on the part of Defendant Bernard Hersh. *A podiatrist does not guarantee or insure results.* The standard of care required of a podiatrist is that he possess a reasonable degree of skill and exercise his skill with ordinary care and diligence. If he does both, he is not responsible for adverse results or conditions to the patient. While so performing, he is not responsible for his mistakes of judgment." (Emphasis supplied.)

We agree with Hersh that in most cases a physician does not guarantee or insure results. However, in this case Hendley testified that Hersh told him that the surgical procedure he was going to perform would cure him. This was denied by Hersh. Thus, it is apparent that there is a controversy on this point. Under these circumstances the instruction requested by Hersh would constitute an impermissible comment on the weight of the evidence in that it would impugn the testimony of Hendley and bolster the testimony of Hersh. We overrule the sixth point of error.

In Hersh's ninth and tenth points of error it is respectively alleged that there is no evidence, or in the alternative, insufficient evidence, to support the jury's findings of negligence and proximate cause in its response to special issue number one. It should be recalled that Hendley has alleged several acts of negligence each of which was allegedly a proximate cause of Hendley's two injuries i.e. the pulmonary embolism and the pain in his foot.

## THE PULMONARY EMBOLISM

Both Dr. McCormick and Dr. Steiner testified that there are different causes of pulmonary emboli and that they could occur with or without surgery. Dr. McCormick further testified that they occur even though all due precautions have been taken. Dr. Steiner added that its occurrence did not necessarily indicate that the physician failed to meet the standards of good medical practice. The testimony is also to the effect that pulmonary emboli are more apt to occur between the fifth and tenth day following surgery and that it is unusual for pulmonary emboli to develop "six, seven, eight, nine, ten months following surgery to the foot" as is the case here. Dr. Steiner did not offer an opinion as to the cause of the pulmonary embolism. Dr. McCormick acknowledged that it was a medical probability that Hendley's pulmonary embolism originated from the site where Hersh operated on Hendley's foot. In the course of the trial this discussion took place between Hendley's counsel and Dr. McCormick:

"Q. Yes, sir. The deviations from the acceptable standards of care that we have just talked about concerning the conduct of Dr. Hersh, in your best medical opinion, were those deviations the cause of the pulmonary embolism and the resulting damages that we have found in Jim Hendley's body?

"A. I will try to be as honest as possible in answering this question. Anytime you operate on the lower extremity there is a danger of pulmonary embolus. The danger, even under the best of circumstances is there. In a patient with a

medical history such as this it is even more so, and the fact that this patient continued to have symptoms of either an infection or a phlebitis in his lower extremity should have led to further consultation; and for this reason I think there is a deviation of medical care here." Hendley would have us read between the lines of this testimony and hold that a causal connection was established. It is obvious to us that Dr. McCormick's response in the above stated discussion was to a question directly inquiring into causation. Rather than saying that there was a causative connection Dr. McCormick limited his response to a statement that there was a deviation from the standard of medical care.

▆▆▆ It is not enough that a plaintiff in a medical malpractice case establish only that there was a deviation from the acceptable standards of medical care. It must also be established by a "reasonable medical certainty" that such deviation was a cause of the plaintiff's injuries. *Boyles v. Bourdon, supra; Lenger v. Physician's General Hospital, Inc.,* 455 S.W.2d 703 (Tex.1970). Viewing the evidence as a whole, we hold that there was insufficient evidence that the surgery performed by Hersh proximately caused the development of the pulmonary embolism.

## THE FOOT PAIN

Dr. Steiner testified that the pain experienced by Hendley resulted from an arthritic condition caused by a violation of the joint in the foot; by cutting into Hendley's joint, Hersh "possibly" created more problems than he could solve; the surgery performed by Hersh created the problem which necessitated subsequent surgery; the fusion he performed cured Hendley's problems of continuing pain; continued pain indicates something has not been solved which presents a medical problem. There was no testimony that Hersh was unqualified to perform the surgery he performed nor was there any testimony that the surgery Hersh performed was unnecessary. There is also no evidence to indicate that the failure of Hersh to obtain Hendley's medical history

had any causal relationship with the pain in his foot. Both Dr. Steiner and Dr. McCormick testified that they would have first attempted "conservative (non-surgical) treatment" before performing surgery. However, a testifying expert cannot establish the medical standards of care by testifying as to what he would have done. *Stanton v. Westbrook*, 598 S.W.2d 331 (Tex. Civ.App.—Houston [14th Dist.] 1980, no writ); *Smith v. Guthrie*, 557 S.W.2d 163 (Tex.Civ.App.—Fort Worth 1977, writ ref'd n. r. e.).

 Dr. Steiner did not testify that the removal of a portion of the joint was a deviation from acceptable standard of medical care. He only testified that he would have stayed out of the joint. Again, this is insufficient to establish negligence. The fact that the subsequent operation performed by Dr. Steiner cured Hendley's condition is not in and of itself evidence of negligence or proximate cause. *Burchfield v. Geitz*, 516 S.W.2d 229 (Tex.Civ.App.—El Paso 1974, no writ).

 The improper pre-operative and post-operative care allegation is germane only to the pulmonary embolism. Furthermore, although there is evidence that Hersh was negligent in discharging Hendley before he had obtained complete recovery and in failing to check and document Hendley's vital signs prior to the surgery, we find no evidence which sufficiently establishes a causal connection between these acts of negligence and Hendley's alleged injuries. We hold Hendley's proof in regard to the foot pain to be lacking.

We sustain Hersh's ninth and tenth points of error and for this reason we hold that the trial court erred in rendering judgment upon the jury's findings. Having sustained these points of error we find it unnecessary to consider Hersh's points of error relating to damages.

We have held there was no evidence as to certain of the allegations of negligence and insufficient evidence as to others. Under these circumstances the interests of justice dictate that the cause be reversed and remanded for retrial.

Reversed and remanded.