Opinion issued April 25, 2002








 







In The

Court of Appeals

For The

First District of Texas






NO. 01-00-00580-CV






MALY KEO, Appellant


V.


BAN VU, M.D.; BICH NGOC; BLUE JADE BEAUTY CENTER; AND QUI
PHI BEAUTY SALON, Appellees






On Appeal from the 269th District Court

Harris County, Texas

Trial Court Cause No. 98-21370






O P I N I O N This is an appeal from a summary judgment rendered against appellant, Maly
Keo, in a negligence and medical malpractice case. In a single issue, Keo argues that
the trial court erred when it (1) excluded the testimony of Keo's expert witness on the
ground he was not qualified to render an opinion in this case under Texas Rule of
Evidence 702 and the case law interpreting it and (2) improperly considered the
plaintiff's credibility when it determined the expert's report (which was based on
facts the plaintiff provided to the expert) constituted any evidence. We reverse the
trial court's judgment and remand the cause.

Background


 Appellee Ban Vu is a physician in Houston who performs cosmetic surgery. 
Dr. Vu advertises his services in conjunction with the beauty services his wife,
appellee Bich Ngoc, provides at salons she owns: appellee Blue Jade Beauty Center
in Houston and appellee Qui Phi Beauty Salon in St. Petersburg, Florida. Both Blue
Jade and Qui Phi refer patients to Dr. Vu and perform intake services for him. Dr. Vu
performs surgery in his office, which is located within the Blue Jade Beauty Center
in Houston.

 On March 22, 1995, Keo traveled to Houston from her home in Chicago for
surgery after an employee at one of Bich Ngoc's beauty centers suggested she needed
cosmetic surgery. When she arrived, it was Bich Ngoc who advised Keo about what
procedures she should have, suggested a new nose shape for Keo, shaped a prosthesis
that Dr. Vu ultimately implanted in Keo's nose, provided preoperative counseling,
and set the price for the surgery.

 When Keo met with Dr. Vu before the surgery, she informed Dr. Vu she had
a prior injection of silicone to her nose bridge, lip, and chin. Dr. Vu informed her that
the prior silicone injection could cause additional problems with the surgery,
including a propensity to develop an infection. Dr. Vu also explained the other risks
associated with the surgery. Keo gave her informed consent in both English and
Vietnamese.

 The next day, Dr. Vu performed the initial surgery on Keo. He first removed
extra skin and fat from Keo's eyelids to alter the appearance of her eyelids and eyes. (1) 
He then placed a cosmetic implant in her nose. Keo was given postoperative
instructions, which included a follow-up appointment in one week. She did not return
for the follow-up appointment. Instead, she returned to her home in Chicago. When
Keo telephoned Dr. Vu for more medication, Bich Ngoc returned her call and
provided Keo with additional postoperative counseling.

 In the year following the eyelid and nose implant surgery, Keo moved from
Chicago to St. Petersburg. Some time during that year, the prosthesis Dr. Vu
implanted in Keo's nose moved. In April 1996, she went to Qui Phi in St. Petersburg. 
Qui Phi referred Keo back to Dr. Vu for a second surgery.

 On May 4, 1996, Dr. Vu performed a second surgery on Keo. (2) He removed the
prosthesis, modified its shape, and reinserted it into Keo's nose. Keo contends she
had an active sinus and nasal infection when Dr. Vu performed the second surgery
and that he did not arrange for postoperative care for Keo with physicians in St.
Petersburg. Dr. Vu, however, testified he instructed Keo to return for an office visit
in one week, but she did not do so.

 After she returned to Florida, Keo sought care from several physicians because
of complications arising from the second surgery. Within a month after the second
surgery, Keo had seen five or six different physicians in an attempt to alleviate pain
and correct the problems. However, the infection that she argues was present when
Dr. Vu performed the second surgery had worsened to the point that another
physician, Dr. Howery, had to perform a third surgery to remove the prosthetic tip.

 Keo filed a lawsuit for negligence and medical malpractice against Dr. Vu and
negligence against Bich Ngoc, Blue Jade, and Qui Phi. In support of her claims, Keo
provided an expert report and deposition testimony from George Gary Card, M.D.,
a surgeon who is board certified in otolaryngology.

 Dr. Vu sought summary judgment under Texas Rule of Civil Procedure 166a(c)
and 166a(i) because Dr. Card was not qualified to testify under Texas Rule of
Evidence 702 and the case law interpreting the rule. The trial court rendered a take-nothing no-evidence summary judgment on the grounds that Dr. Card was not
qualified to testify under the requirements of Rule 702 and there was no scientifically
reliable evidence supporting Keo's causes of action.

Standard of Review



 Whether an Expert is Qualified


 A two-part test governs whether expert testimony is admissible: (1) the expert
must be qualified and (2) the testimony must be relevant and be based on a reliable
foundation. E.I. du Pont de Nemours & Co. v. Robinson, 923 S.W.2d 549, 556 (Tex.
1995). The trial court makes the initial determination whether the expert and the
proffered testimony meet these requirements. Robinson, 923 S.W.2d at 556. The trial
court has broad discretion to determine admissibility, and we will reverse only if there
is an abuse of that discretion. Robinson, 923 S.W.2d at 558; Harris County Hosp.
Dist. v. Estrada, 872 S.W.2d 759, 762 (Tex. App.--Houston [1st Dist.] 1993, writ
denied).

 A reviewing court cannot conclude that a trial court abused its discretion if, in
the same circumstances, it would have ruled differently or if the trial court committed
a mere error in judgment. Robinson, 923 S.W.2d at 558. The test is not whether the
facts present an appropriate case for the trial court's action in the opinion of the
reviewing court. Id. We will gauge an abuse of discretion by whether the trial court
acted without reference to any guiding rules or principles. Id. Thus, a trial court
enjoys wide latitude in determining whether expert testimony is admissible. Harvey
Brown, Procedural Issues Under Daubert, 36 Hous. L. Rev. 1133, 1159 (1999). 
However, when there is proof of a physician's expertise in the particular areas
involved in the case, the trial court abuses its discretion by refusing to qualify the
physician as an expert witness. Blan v. Ali, 7 S.W.3d 741, 747 (Tex. App.--Houston
[14th Dist.] 1999, no pet.); Spivey v. James, 1 S.W.3d 380, 385 (Tex.
App.--Texarkana 1999, pet. denied).


 No-Evidence-Summary-Judgment Standard of Review


 We review a no-evidence summary judgment by construing the record in the
light most favorable to the nonmovant and disregarding all contrary evidence and
inferences. KPMG Peat Marwick v. Harrison County Hous. Fin. Corp., 988 S.W.2d
746, 748 (Tex.1999); Flameout Design & Fabrication, Inc. v. Pennzoil Caspian
Corp., 994 S.W.2d 830, 834 (Tex. App.--Houston [1st Dist.] 1999, no pet.). A
no-evidence summary judgment is improper if the nonmovant brings forth more than
a scintilla of evidence to raise a genuine issue of material fact. See Tex. R. Civ. P.
166a(i); KPMG Peat Marwick, 988 S.W.2d at 748; Greathouse v. Alvin Indep. Sch.
Dist., 17 S.W.3d 419, 423 (Tex. App.--Houston [1st Dist.] 2000, no pet.).

 When, as here, the summary judgment states the ground or grounds on which
the trial court based its decision to render summary judgment, we will affirm the
summary judgment if one of those grounds is meritorious. See State Farm Fire &
Cas. Co. v. S.S., 858 S.W.2d 374, 380 (Tex. 1993); State Farm Mut. Auto. Ins. Co. v.
Nguyen, 920 S.W.2d 409, 410 (Tex. App.--Houston [1st Dist.] 1996, no writ). The
summary judgment in this appeal states that the grounds on which summary judgment
was based is that Dr. Card was not qualified as an expert under Rule 702 and that
there was "no scientifically reliable evidence" to support Keo's negligence claims. 
Therefore, we review whether the trial court abused its discretion when it determined:
(1) Dr. Card was not qualified under Rule 702 to provide expert testimony and (2) Dr.
Card's testimony was not "scientifically reliable evidence." We then look to whether
the no-evidence summary judgment was proper.

Was Dr. Card Qualified?


 In a negligence case, the negligent act must be the proximate cause of the
injury. Union Pump Co. v. Allbritton, 898 S.W.2d 773, 775 (Tex. 1995). To establish
causation in a personal-injury case, a plaintiff must prove the defendant's conduct
caused an event and that event caused the plaintiff to suffer compensable damages.
See Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995). The causal
link between the event on which suit is based and the plaintiff's injuries must be
shown by competent evidence. Morgan v. Compugraphic Corp., 675 S.W.2d 729,
732 (Tex. 1984). A jury may decide the required causal nexus between the event on
which suit is based and the plaintiff's injuries when (1) general experience and
common sense will enable a layperson to fairly determine the causal nexus, (2) expert
testimony establishes a traceable chain of causation from injuries back to the event,
or (3) expert testimony shows a probable-cause nexus. Weidner v. Sanchez, 14
S.W.3d 353, 370 (Tex. App.-- Houston [14th Dist.] 2000, no pet.); Blankenship v.
Mirick, 984 S.W.2d 771, 775 (Tex. App.--Waco 1999, pet. denied).

 In deciding if an expert is qualified, trial courts "must ensure that those who
purport to be experts truly have expertise concerning the actual subject about which
they are offering an opinion." Gammill v. Jack Williams Chevrolet, Inc., 972 S.W.2d
713, 719 (Tex. 1998) (quoting Broders v. Heise, 924 S.W.2d 148, 152 (Tex. 1996)). 
Texas Rule of Evidence 702 permits a witness who is qualified as an expert by
knowledge, skill, experience, training, or education to testify on scientific, technical,
or other specialized subjects if the testimony would assist the trier of fact in
understanding the evidence or determining a fact issue. Whether an expert is
qualified is, under Texas Rule of Evidence 104(a), a preliminary question to be
decided by the trial court. "[T]he party offering the expert's testimony bears the
burden to prove that the witness is qualified under [Rule] 702." Gammill, 972
S.W.2d at 718; Broders, 924 S.W.2d at 151. The offering party must demonstrate
that the witness possesses special knowledge as to the very matter on which the
witness proposes to give an opinion. Gammill, 972 S.W.2d at 718; Broders, 924
S.W.2d at 152-53. The trial court's acceptance of a witness's qualifications as an
expert is reviewable for an abuse of discretion. Gammill, 972 S.W.2d at 718-19;
Broders, 924 S.W.2d at 151.

 In Broders, the issue was whether the trial court abused its discretion in
excluding the testimony of an emergency physician who opined that three defendant
emergency physicians and the defendant hospital caused a patient's death by failing
to diagnose plaintiff's head injury. 924 S.W.2d at 149. The supreme court held that
the district court did not abuse its discretion in excluding the opinion of the 
plaintiff's expert regarding causation because, although the expert plainly had greater
knowledge of medicine generally than a lay person, he did not have specialized
knowledge on the precise subject of causation. Id. at 153-54. The court based its
decision on the increasingly specialized and technical nature of medicine, saying,
"there is no validity, if there ever was, to the notion that every licensed medical
doctor should be automatically qualified to testify as an expert on every medical
question." Id. at 152. The court also observed that:

 [w]hen a party can show that a subject is substantially developed in
more than one field, testimony can come from a qualified expert in any
of those fields. Porter v. Puryear, 153 Tex. 82, 262 S.W.2d 933, 936
(Tex. 1953). See also Hersh v. Hendley, 626 S.W.2d 151, 154-55 (Tex.
App.--Fort Worth 1981, no writ) (orthopedic surgeon could testify in
suit against podiatrist on the standard of care for podiatric surgery since
it "was common throughout the medical profession.")


Id. at 154.

 Courts of appeals have also recognized that an expert witness need not be a
specialist in the particular branch of the medical profession for which the testimony
is offered. See Hernandez v. Altenberg, 904 S.W.2d 734, 738 (Tex. App.--San
Antonio 1995, writ denied); Simpson v. Glenn, 537 S.W.2d 114, 116 (Tex. Civ.
App.--Amarillo 1976, writ ref'd n.r.e.). Indeed, trial courts may qualify a medical
witness of a different specialty to testify if the witness has practical knowledge of
what is usually and customarily done by other practitioners under circumstances
similar to those confronting the malpractice defendant. Blan, 7 S.W.3d at 745; see
Marling v. Maillard, 826 S.W.2d 735, 740 (Tex. App.--Houston [14 th Dist.] 1992,
no writ) (citing Bilderback v. Priestley, 709 S.W.2d 736, 740 (Tex. App.--San
Antonio 1986, writ ref'd n.r.e.)). For example, an orthopedic surgeon is qualified to
testify as to the standard of care for a radiologist because the two professions work
closely together and their specialties are intertwined. See Silvas v. Ghiatas, 954
S.W.2d 50, 54 (Tex. App.--San Antonio 1997, writ denied). Likewise, a general
surgeon was permitted to testify regarding the standard of care for postoperative
procedures performed by a gynecologist because postoperative procedures are
common to both fields. See Simpson, 537 S.W.2d at 116-18. In contrast, a
pediatrician who admitted he knew little about gynecological matters was not
permitted to testify against an obstetrician/gynecologist about postsurgical pain in a
patient's pubic area. See Roberson v. Factor, 583 S.W.2d 818, 821 (Tex. Civ.
App.--Dallas 1979, writ ref'd n.r.e.). Accordingly, the law is that if the subject
matter is common to and equally recognized and developed in all fields of practice,
any physician familiar with the subject may testify as to the standard of care. See
Blan, 7 S.W.2d at 745-46; see, e.g., Hersh v. Hendley, 626 S.W.2d 151, 154 (Tex.
Civ. App.-- Fort Worth 1981, no writ) (taking medical history, discharging patient);
Garza v. Keillor, 623 S.W.2d 669, 671 (Tex. Civ. App.--Houston [14 th Dist.] 1981,
writ ref'd n.r.e.) (infection process); Sears v. Cooper, 574 S.W.2d 612, 615 (Tex. Civ.
App.--Houston [14th Dist.] 1978, writ ref'd n.r.e.) (use of diuretic).

 In this case, Keo offered the testimony of Dr. Card in support of her claims of
negligence against Dr. Vu. Dr. Card is board certified in otolaryngology. The
evidence shows that Dr. Card practices ear and throat surgery at the Houston Ear,
Nose, and Throat Clinic, where he is a partner. He received his doctor of medicine
from Baylor College of Medicine in 1971. He then did an internship at Baylor-affiliated hospitals before serving two years as a flight surgeon in the United States
Air Force. After being discharged from active duty, Dr. Card did a residency in
general surgery with Dr. Michael DeBakey. He completed his residency in
otorhinolaryngology at a Baylor-affiliated hospital.

 After completing his training, Dr. Card taught otolaryngology at Baylor
College of Medicine from 1978 until 1996. He served as a volunteer teacher in
otolaryngology with the University of Texas Family Practice Residency Program
from 1984 to the present. In the early years of his practice, Dr. Card performed
rhinoplasties, the same surgical procedure Dr. Vu performed on Keo. He currently
practices general otolaryngology, which "includes reconstructive ear surgery, sinus
surgery, cancer surgery, laryngeal, throat surgery, vocal cord surgery, . . . [and] [a]ny
medical surgical condition in the head and neck area other than cosmetic surgery." 
He has been board certified in otolaryngology since 1978. He performs surgery every
week.

 Keo's complaints against Dr. Vu relate to surgical practices employed
generally, such as lack of preoperative and postoperative counseling and care. In
addition, she contends Dr. Vu (1) performed the second operation when Keo had an
active infection and (2) did not appropriately treat her postoperative infection. Unlike
the emergency physician in Broders, this record evidences that operative procedures
generally and the infection process related to surgery on the head in particular are
within Dr. Card's expertise. That Dr. Card does not currently perform rhinoplasties
or other cosmetic surgery does not alone render him unqualified to assert an opinion
regarding the standard of care for surgery on the head and neck generally or to assert
an opinion regarding issues that are common to all surgeries, including the adequacy
of preoperative and postoperative counseling and the treatment of postoperative
infections. (3) This is especially true in light of the evidence that he regularly performs
surgery on the head and neck. Because there is proof that Dr. Card had expertise and
actual experience regarding the specific issues of the standard of care for head and
neck surgeries and the standard of care for surgical procedures in general, we hold the
trial court abused its discretion when it excluded his expert testimony on the ground
he was not qualified.

Was Dr. Card's Testimony "Scientifically Reliable Evidence?"


 In their motion, the appellees also argued Dr. Card's testimony was inherently
unreliable and insufficient evidence of causation because (1) Dr. Card relied on Keo's
testimony that her nose was infected before the second surgery, that Keo's testimony
was not credible, and there was no objective proof that Keo's nose was infected as
she said it was and (2) Dr. Card did not cite to any studies or literature in forming his
opinion.


 Standard of Review


 An expert may testify on scientific, technical, or other specialized subjects if
the testimony would assist the fact finder in understanding the evidence or
determining a fact issue. See Tex. R. Evid. 702. To assist the fact finder, the
proposed expert testimony must be relevant and reliable. Gammill, 972 S.W.2d at
720. When the expert's underlying scientific technique or principle is unreliable, the
expert's opinion is no more than subjective belief or unsupported speculation and is
inadmissible. Id.; Robinson, 923 S.W.2d at 557. Whether an expert's testimony is reliable is a preliminary question for the trial
court. See Tex. R. Evid. 104(a); Gammill, 972 S.W.2d at 718. As we discussed
above, the expert must possess "special knowledge as to the very matter on which he
proposes to give an opinion." See Gammill, 972 S.W.2d at 718. Although the factors
the trial court may consider in making this determination will differ in each case,
some factors include, but are not limited to, (1) the extent to which the theory has
been tested, (2) the extent to which the technique relies on the expert's subjective
interpretation, (3) whether the theory has been subject to peer review and/or
publication; (4) the technique's potential rate of error, (5) whether the underlying
theory or technique has been generally accepted as valid by the relevant scientific
community, and (6) the nonjudicial uses that have been made of the theory or
technique. Id. at 720.

 The trial court is not to determine whether the expert's conclusions are correct,
but only whether the analysis used to reach them is reliable. Id. at 728. An expert's
testimony can be unreliable even when the underlying data is sound if the expert
draws conclusions from that data based on flawed methodology. Merrell Dow
Pharmaceuticals, Inc. v. Havner, 953 S.W.2d 706, 721-29 (Tex. 1997). There also
may be "simply too great an analytical gap between the data and the opinion
proffered" for the opinion to be reliable. Gammill, 972 S.W.2d at 726. We review
the ruling excluding an expert's testimony for abuse of discretion. Id. at 718-19.


 Analysis 


 The appellees argued in the trial court that Dr. Card's opinion constituted no
evidence under Havner for several reasons. In response, Keo contends that Havner
does not apply and therefore does not support the trial court's exclusion of Dr. Card's
testimony. We agree with Keo that Havner does not support the exclusion of Dr.
Card's testimony as scientifically unreliable evidence.

 First, the appellees argue that because Keo is a convicted felon, her testimony
that her nose was infected before the second surgery is not credible. The appellees
go on to argue that because there is no objective evidence of infection before the
second surgery, there is no reliable foundation for Dr. Card's opinion regarding
causation.

 In cases in which the credibility of a witness is likely to be a dispositive factor
in resolution of a case, summary judgment is inappropriate. Casso v. Brand, 776
S.W.2d 551, 558 (Tex. 1989); McClellan v. Ritz-Carlton Hotel Co., 961 S.W.2d 463,
465 (Tex. App.--Houston [1st Dist.] 1997, no writ). Further, factual weaknesses
underlying an expert's causation opinion generally go to the testimony's weight,
rather than its admissibility, and the opinion is no evidence only if based completely
upon speculation and surmise. See Onwuteaka v. Gill, 908 S.W.2d 276, 283 (Tex.
App.--Houston [1st Dist.] 1995, no writ); cf. Schaefer v. Tex. Employers Ins. Ass'n,
612 S.W.2d 199, 204-05 (Tex. 1980) (expert's medical opinion constituted no
evidence because it was based on speculation and surmise rather than reasonable
medical probability). Therefore, the credibility of Keo's testimony regarding the
presence of infection in her nose before the second surgery was an issue that was not
properly decided on summary judgment. Likewise, the determination that Dr. Card's
opinion was inherently unreliable because it was based on Keo's testimony was also
not appropriate for summary judgment because Keo's credibility was itself a fact
issue. The credibility of Keo's testimony and the reliability of Dr. Card's opinion go
to the weight, rather than the admissibility, of the evidence.

 The appellees also argue that Dr. Card's opinion was inherently unreliable and,
therefore, no evidence, because he did not cite to any authoritative literature or
medical studies to support his criticisms of Dr. Vu's actions. Dr. Card's testimony
establishes he was familiar with preoperative and postoperative procedures for head
and neck surgery because of his knowledge, skill, experience, training, and education
in the field of otolaryngology. See Tex. R. Evid. 702. The appellees do not cite, and
we are not aware of, any authority that an expert must refer to authoritative literature
or medical studies in order for the expert's opinion to be reliable. The fact that Dr.
Card did not refer to authoritative literature or medical studies in forming his opinion
regarding such general subjects as preoperative and postoperative procedures and
whether it was advisable to perform an operation on the nose when an infection is
present does not render his methodology flawed.

 The function of the trial court in this instance was not to determine if Dr.
Card's conclusion was correct, but to determine whether his analysis, based on the
evidence, was reliable. The trial court abused its discretion when it concluded Dr.
Card's analysis was not sufficiently reliable to be admitted into evidence.

The No-Evidence Summary Judgment


 Because we have held the trial court should have considered Dr. Card's report
and deposition testimony, we now look to whether there was more than a scintilla of
evidence to raise a genuine issue of material fact. We review the no-evidence
summary judgment by construing the record in the light most favorable to the
nonmovant and disregarding all contrary evidence and inferences. See KPMG Peat
Marwick, 988 S.W.2d at 748; Flameout, 994 S.W.2d at 834. A no-evidence summary
judgment is improper if the nonmovant brings forth more than a scintilla of evidence
to raise a genuine issue of material fact. See Tex. R. Civ. P. 166a(i); KPMG Peat
Marwick, 988 S.W.2d at 748; Greathouse, 17 S.W.3d at 423.

 Dr. Card's expert report sets forth the general standard of care for surgical
procedures and opines how Dr. Vu breached the standard of care by failing to provide
adequate preoperative and postoperative counseling and care, deviating from
accepted record-keeping practices, and failing to properly manage Keo's
postoperative infection. In his deposition, Dr. Card criticized Dr. Vu's pre- and
postoperative practices and criticized Dr. Vu for performing the second operation
while Keo had an infection. Although there are several inconsistencies in Dr. Card's
testimony, we must construe the record in the light most favorable to the nonmovant
and disregard all contrary evidence and inferences in reviewing a no-evidence motion
for summary judgment. Flameout, 994 S.W.2d at 834. Under this standard, we hold
there is more than a scintilla of evidence to support Keo's claims against Dr. Vu. 
Therefore, we sustain issue one.

Conclusion

 We reverse the judgment and remand the cause to the trial court for further
proceedings.



Sherry J. Radack

Justice


Panel consists of Chief Justice Schneider and Justices Radack and Smith. (4)

Publish. Tex. R. App. P. 47.4.
1. Keo apparently has no complaints about the outcome of this procedure.
2. Again, Keo signed an informed consent for the surgery.
3. If Keo's complaints went to issues unique to cosmetic surgery, our
opinion here might have a different result. 
4. The Honorable Jackson B. Smith, Jr., retired Justice, Court of Appeals,
First District of Texas at Houston, participating by assignment.