[COMMENT1] 

 

 

 

 

 

 

                                        COURT
OF APPEALS

                                         SECOND
DISTRICT OF TEXAS

                                                     FORT
WORTH

 

 

                                           NO.
2-05-350-CV

 

 

MARGARET YOUNG, INDIVIDUALLY AND                               APPELLANT

AS
REPRESENTATIVE OF THE ESTATE OF

WILLIAM
R. YOUNG

 

                                                      V.

 

VENKATESWARLU THOTA, M.D. AND                                    APPELLEES

NORTH
TEXAS CARDIOLOGY CENTER

 

                                                  ------------

 

              FROM
THE 30TH DISTRICT COURT OF WICHITA COUNTY

 

                                                  ------------

 

                                                OPINION

 

                                                  ------------



 



Appellant Margaret Young,
individually and on behalf of the estate of her deceased husband, William R. (ARonnie@) Young,
appeals from an adverse jury verdict on her medical malpractice claim against
Venkateswarlu Thota, M.D. and his employer, North Texas Cardiology Center
(NTCC), in connection with their treatment during Ronnie=s cardiac catheterization.  We
reverse and remand for a new trial.

                                          Factual Background

Appellant is Ronnie=s widow.  Ronnie died on March
10, 2005. Ronnie had suffered from a blood disorder called Polycythemia Vera
(PV) and coronary artery disease, including hypertension and angina.  His cardiologist, Dr. Thota, with NTCC
(collectively Aappellees@), recommended that Ronnie undergo a cardiac catheterization to
evaluate his heart condition.  The
catheterization was scheduled for March 4, 2002 at United Regional Health Care
System in Wichita Falls, Texas.  Dr.
Thota performed the procedure that morning, and Ronnie was discharged that
afternoon.  At the time, Ronnie was
fifty-five years of age.





After Ronnie began feeling
poorly at home and fell from his chair around 11:45 p.m., appellant called 911,
and Ronnie returned to the hospital=s emergency room around 1:15 a.m. 
Olyn Walker, M.D. ultimately operated on Ronnie that night to repair a
tear in his iliac artery and the resulting internal bleeding allegedly caused
by the catheterization procedure.  During
the emergency surgery, Dr. Walker discovered a large hematoma from severe
bleeding in the peritoneal cavity.  After
the surgery, Ronnie was placed on a ventilator, suffered acute renal failure
that required dialysis, received multiple blood transfusions, underwent a
splenectomy, and underwent surgery to remove his gallbladder once it became
gangrenous due to ischemia caused by the bleed. 
He ultimately lost vision in one eye and suffered numerous strokes and
blood clots, all allegedly as a result of the negligent catheterization.  Ronnie stayed in the hospital in Wichita
Falls for two months and later transferred to Baylor University Medical Center
(BUMC) in Dallas, Texas, on May 2, 2002. 
While at BUMC, he was diagnosed with and treated for thrombocytosis,
sepsis, respiratory failure, depression, malnourishment, gout, deep vein
thrombosis, and portal vein thrombosis. 
When he left BUMC, he went to Baylor Specialty Hospital for
rehabilitation for an additional two months. 
Ronnie died on March 10, 2005, about three years after the original
procedure, at the age of fifty-eight.





After Ronnie died, appellant
brought suit individually and on behalf of his estate against Dr. Thota and
NTCC.[1]  Appellant alleged appellees were negligent in
failing to obtain an accurate medical history on Ronnie, in failing to take
into consideration any of Ronnie=s pre-existing conditions that might have exacerbated potential
complications, in failing to properly locate the femoral artery and lacerating
the right iliac artery instead during the catheterization, in failing to
discover the laceration before discharging Ronnie, and in failing to properly
diagnose and treat the tear. 

In response, appellees
contended that Ronnie=s injuries
were the result of an unavoidable accident; in other words, they were no one=s fault.  Alternatively, they
contended that his injuries were the result of a new and independent cause or
the result of pre-existing conditions or subsequent conditions.  Appellees also contended that the occurrence
was the result of Ronnie=s
comparative negligence under chapter 33 of the civil practices and remedies
code and asserted a counterclaim against Ronnie for contribution and for his
alleged failure to mitigate his damages. 
Appellees= defenses
and counterclaims generally focused on their claims that Ronnie=s injuries were a result of his pre-existing conditions, as well as
Ronnie=s failure to follow his discharge instructions.





The trial court submitted
issues on appellees= negligence
and Ronnie=s
contributory negligence and further gave the jury inferential rebuttal
instructions on new and independent cause and unavoidable accident.[2]  In a ten to two verdict, the jury found that
only Ronnie was negligent and awarded neither Ronnie=s estate nor appellant any damages. 

                                            Issues on Appeal

In four issues, appellant
challenges the sufficiency of the evidence to support the jury=s answers to Question One, complains that the trial court erred by
submitting Ronnie=s
contributory negligence to the jury within this question, and contends that the
trial court erred by submitting jury instructions on unavoidable accident and
new and independent cause.

                                      Claimed Jury Charge Error

First, we address those
issues claiming jury charge error.  We
address the propriety of the trial court=s charge regarding Ronnie=s contributory negligence first because that issue is potentially
dispositive of the appeal and could give appellant the greatest relief.  See Tex. R. App. P. 47.1; see
generally VanDevender v. Woods, 222 S.W.3d 430, 433 n.9 (Tex. 2007); West
v. Robinson,180 S.W.3d 575, 576B77 (Tex. 2005); Profitlive P=ship v. Surber, 248 S.W.3d 259, 262
(Tex. App.CFort Worth
2007, no pet.); id. at 263 (Walker, J., concurring and dissenting).

Standard of Review





Rule 277 requires a trial
court, whenever feasible, to submit a cause in broad-form questions.  Tex. R. Civ. P. 277.  Rule 278 requires a court to submit
instructions and definitions to the jury as are necessary to enable the jury to
render a verdict.  Tex. R. Civ. P. 278; Goose
Creek Consol. ISD v. Jarrar=s Plumbing, Inc., 74 S.W.3d 486, 499
(Tex. App.CTexarkana
2002, pets. denied).  Inferential
rebuttal questions are not to be submitted to a jury; only instructions and
definitions may be given.  Tex. R. Civ.
P. 277.  We review claimed jury charge
error for an abuse of discretion.  In
re V.L.K., 24 S.W.3d 338, 341 (Tex. 2000); Goose Creek, 74 S.W.3d at
499; see also Tex. Dep=t of Human Servs. v. E.B., 802 S.W.2d
647, 649 (Tex. 1990).  If the pleadings
and evidence raise the issue, a party is entitled to a jury question,
instruction, or definition on the matter. Tex. R. Civ. P. 278; Union Pac.
R.R. Co. v. Williams, 85 S.W.3d 162, 166 (Tex. 2002).

The Charge

In her issues, appellant
focuses on charge error that she claims occurred in the first jury question and
the challenged definitions.  Question One
asked, as to both appellee, Dr. Thota, and Ronnie:

Did the negligence, if any, of those named below,
proximately cause the injury in question, if any?

 

ANegligence,@ when
used with respect to the conduct of Venkat Thota, M.D., means failure to use
ordinary care, that is, failing to do that which a cardiologist of ordinary
prudence would have done under the same or similar circumstances or doing that
which a cardiologist of ordinary prudence would not have done under the same or
similar circumstances.



 



AOrdinary
care,@ when
used with respect to the conduct of Venkat Thota, M.D., means that degree of
care that a cardiologist of ordinary prudence would use under the same or
similar circumstances.



AProximate
Cause@ when
used with respect to the conduct of Venkat Thota, M.D., means that cause which,
in a natural and continuous sequence unbroken by any new and independent cause,
produces an event, and without which cause such event would not have occurred.  In order to be a proximate cause, the act or
omission complained of must be such that a cardiologist using ordinary care
would have foreseen that the event, or some similar event, might reasonably
result therefrom.  There may be more than
one proximate cause of an event.



ANew
and independent cause,@ when used with respect to
the conduct of Venkat Thota, M.D., means the act or omission of a separate and
independent agency, not reasonably foreseeable by a cardiologist exercising
ordinary care, that destroys the causal connection, if any, between the act or
omission inquired about and the injury in question and thereby becomes the
immediate cause of such injury.



ANegligence,@ when
used with respect to the conduct of [Ronnie] Young means failure to use
ordinary care, that is, failing to do that which a person of ordinary prudence
would have done under the same or similar circumstances or doing that which a
person of ordinary prudence would not have done under the same or similar
circumstances.



AOrdinary
care,@ when
used with respect to the conduct of [Ronnie] Young means that degree of care
that a person of ordinary prudence would use under the same or similar
circumstances.

 





AProximate
cause,@ when
used with respect to the conduct of [Ronnie] Young means that cause which, in a
natural and continuous sequence, produces an event, and without which cause
such event would not have occurred.  In
order to be a proximate cause, the act or omission complained of must be such
that a person using ordinary care would have foreseen that the event, or some
similar event, might reasonably result therefrom.  There may be more than one proximate cause of
an event.

 

An injury may be an Aunavoidable
accident,@ that
is, an event not proximately caused by the negligence of any party to it.

 

Answer AYes@ or ANo@.

 

Venkat Thota, M.D.:                                     [NO]           

 

[Ronnie] Young:                                            [YES]          

 

[Emphasis added.]

 

The next jury question
conditionally asked about Dr. Thota=s and Ronnie=s
comparative (percentage) negligence but was not answered because of the jury=s answer to the first question.

Contributory Negligence versus Mitigation
of Damages





In part of her second issue,
appellant complains of charge error in the submission of Ronnie=s claimed contributory negligence instead of an instruction on Ronnie=s duty to mitigate his damages. 
When considering the propriety of submitting a plaintiff=s contributory negligence as opposed to a plaintiff=s failure to mitigate his or her damages, we are to consider whether
the alleged negligence Amerely
increases or adds to the extent of the loss or injury occasioned by another=s negligence,@ in which
case submission of an instruction on mitigation of damages would be appropriate
as opposed to a contributory negligence question.  Elbaor v. Smith, 845 S.W.2d 240, 245
(Tex. 1992) (citing Kerby v. Abilene Christian Coll., 503 S.W.2d 526,
528 (Tex. 1973)).

The mitigation of damages
doctrine requires an injured party to Aexercise reasonable care to minimize its damages if damages can be
avoided with only slight expense and reasonable effort.@  Cotten v. Weatherford
Bancshares, Inc., 187 S.W.3d 687, 708 (Tex. App.CFort Worth 2006, pet. denied). 
As noted by the Texas Supreme Court in Moulton v. Alamo Ambulance
Serv., Inc., the injured person=s failure 

to
care for and treat his injuries as a reasonable prudent person would under the
same or similar circumstances was >a branch of the doctrine of
contributory negligence[=] . .
. only in the sense that damages resulting from such failure are ultimately not
proximately caused by the wrongdoer=s acts or omissions, but by
the injured person=s own
subsequent negligence.

 

414 S.W.2d 444, 449 (Tex. 1967) (emphasis added)
(quoting Gulf, C. & S.F. Ry. Co. v. Mannewitz, 70 Tex. 73, 8 S.W.
66, 67 (1888)).  In Moulton, the
court noted that the plaintiff=s failure to follow competent medical advice aggravated the injuries
he sustained in a collision and thus allowed submission of an instruction on
failure to mitigate damages as opposed to one on contributory negligence.  Id. at 448B49.





AContributory
negligence goes to the proximate cause of the original incident.@  Hygeia Dairy Co. v.
Gonzalez, 994 S.W.2d 220, 226 (Tex. App.CSan Antonio 1999, no pet.).  AMitigation of damages, on the other hand, arises from [the injured
party=s] separate duty to act reasonably in reducing his damages.@  Id.; see also Harris
County v. Smoker, 934 S.W.2d 714, 721 (Tex. App.CHouston [1st Dist.] 1996, writ denied) (summarizing Moulton=s holding that an instruction on
mitigation of damages is appropriate when there is evidence of negligence on
the part of the plaintiff in failing to consult a doctor, in doing so untimely,
in failing to follow a doctor=s advice, or in not caring for and treating injuries that do not
require a doctor=s
attention).

The party that asserts the
injured party=s failure to
mitigate has the burden of proving the failure to mitigate and must show the
extent to which the damages were increased by the failure to mitigate.  Cotten, 187 S.W.3d at 708; U.S.
Rest. Props. Operating L.P. v. Motel Enters., Inc., 104 S.W.3d 284, 293
(Tex. App.CBeaumont
2003, pet. denied).





In Kerby, the
plaintiff driver suffered injuries when the defendant=s school bus ran a red light and struck him.  503 S.W.2d at 527.  The plaintiff, driving a linen van, was
thrown from his van through its open sliding door when it was struck.  Id. 
The van landed on him, and he suffered injuries.  Id. 
At trial, the court submitted questions to the jury inquiring of the
plaintiff=s potential
contributory negligence in leaving his van door open.  Id. 
The jury answered affirmatively, finding the plaintiff thirty-five
percent negligent in causing the accident. 
Id.  The trial court
entered judgment in the plaintiff=s favor on the jury=s verdict but reduced the amount of damages it found by the percentage
of negligence attributable to the plaintiff. 
Id.  The appeals court
reversed the trial court=s judgment
and rendered judgment solely in favor of the defendant, concluding that the
special issues inquiring of plaintiff=s negligence in leaving the van door open constituted findings of
contributory negligence and proximate cause, requiring a complete defense
verdict.[3]  Id. 
The supreme court reversed both the trial court=s judgment and the court of appeals=s judgment and rendered judgment for the plaintiff for the entire
amount of damages assessed by the jury, unreduced by the percentage of
negligence it attributed to the plaintiff. 
Id. at 529.  The supreme
court held, AEven if
there were proof that the particular injury suffered would not have been suffered
had Kerby avoided being thrown from his truck, it would not support the jury=s finding of percentage contribution.@  Id.  The court noted, ANegligence which merely increases or adds to the extent of the loss or
injury occasioned by another=s negligence is not such contributory negligence as would defeat
recovery.@  Id. at 526.  Thus, the supreme court held that the trial
court erroneously included an issue on the plaintiff=s alleged contributory negligence instead of a mitigation
instruction.  Id. at 528.

Alternatively, in Elbaor,
plaintiff Smith, who had also been injured in an automobile accident, went to a
hospital for treatment for her multiple injuries, including a bleeding,
compound ankle fracture.  845 S.W.2d at  241B42.  She underwent emergency
surgery to stop the bleeding, and she remained under the admitting doctor=s care for the first week.  Id.
at 242.  She transferred to a different
hospital and was then under the care of James E. Elbaor, M.D., an orthopedic
surgeon, among others, including an infectious disease specialist, who put her
on intravenous antibiotics.  Id.  While there, she also underwent two wound
debridements in an effort to stop any infection in her ankle.  Id. 
A few weeks later, she was transferred to another hospital where her
then physician removed a two-inch section of bone from her ankle.  Id. 
Despite continued treatment over the next three years, her ankle
ultimately became fused.  Id.





While settling with some of
the providers, she went to trial against Dr. Elbaor and Dr. Syrquin, one of her
other treating physicians, and the jury returned a substantial verdict in her
favor, allocating eighty-eight percent of the liability to Dr. Elbaor and
twelve percent to Dr. Syrquin.  Id.  Whether Smith=s ankle was infected was hotly contested at trial, but evidence showed
that she had been uncooperative and had refused to follow some of her doctors= instructions concerning her antibiotic medications and traction.  Id. 
The trial court refused to submit Dr. Elbaor=s requested question on Smith=s contributory negligence, finding the evidence insufficient to
support the submission of the issue and, instead, instructed the jury on its
right to consider Smith=s failure to
mitigate damages.[4]  Id. at 245.  On appeal, Dr. Elbaor challenged, among other
things, the trial court=s failure to
submit his requested issue on Smith=s contributory negligence.  Id.
at 244.  The appellate court agreed with
the trial court and affirmed its decision to instruct only on mitigation based
on Kerby.  Id. at 244B45.  The Texas Supreme Court
reversed, however, concluding that the facts in Elbaor were
distinguishable from Kerby and required the submission of the plaintiff=s contributory negligence as opposed to only an instruction addressing
her failure to mitigate her damages.  Id.
at 245.  The Texas Supreme Court pointed
to the distinction exemplified in Kerby: 
we look to whether the plaintiff=s conduct contributed to the accident or occurrence or only increased
the injuries suffered.  Id.  AContributory negligence must have the causal connection with the
accident that but for the conduct the accident would not have happened.@  Kerby, 503 S.W.2d at
528.





In reviewing rules 277 and
278, the court in Elbaor noted that trial courts are required to submit
requested questions if the evidence supports them.  845 S.W.2d at 243.  First, the court considered whether any
evidence existed showing that Smith=s refusal to take antibiotics preceded the onset of infection to her
ankle.  Id.  Finding such evidence to exist, the court
next noted some of the factual distinctions between the Elbaor case and
the Kerby case.  Id.  For example, it observed that driving with a
van door open was not Aintrinsically
harmful@ or a Abreach of a
legal duty@ as opposed
to the doctor-patient relationship in Elbaor that presupposes a Aduty of cooperation which patients owe treating physicians who assume
the duty to care for them.@  Id. at 245.  Perhaps more importantly, the Kerby
court noted that having the van door open did not actually contribute to the
vehicular accident, the basis for the suit, Arather, it only increased the injuries suffered in the
accident.@  Id. 
Conversely, in the Elbaor case, the Aaccident@ or Aoccurrence@ at issue in
the suit was Smith=s infected
ankle (as opposed to the original vehicular accident that caused her original
compound ankle fracture), and her conduct contributed to or even resulted in
the infection.  Id.  While the Aaccident@ or Aoccurrence@ in Kerby
would have happened with or without the van door being left open, the Ainfected ankle@ that Smith
claimed Elbaor=s
malpractice caused might not have occurred had Smith simply followed her doctor=s instructions.  Id.  Therefore, the supreme court held that the
trial court=s submission
of an instruction on mitigation of damages instead of a question on Smith=s alleged contributory negligence was error and reversed and remanded
for a new trial.  Id. at 241.





In Ronnie=s case, the Ainjury,@ Aaccident,@ or Aoccurrence@ was the tear in the artery and the damages were the resulting
peritoneal bleed.  The issue was what or
who caused the tear.  Appellant=s theory was that Dr. Thota made the catheterization incision too high
so that sufficient clotting at the site never occurred.  Appellant contended that the bleeding into
Ronnie=s abdomen would not have occurred if Dr. Thota=s incision had been made at or below the inguinal ligament.  Specifically, Appellant argued that if the
puncture site had been properly placed, the bleeding, if any, would have
occurred at the puncture site, which would have been immediately apparent,
likely before Ronnie was even discharged. 
Conversely, Dr. Thota theorized that the catheterization incision site
was proper, that hemostasis had occurred before Ronnie was discharged, that a
spontaneous blood clot or tear occurred later in the day, that Ronnie=s retroperitoneal bleed was the result of his failure to timely return
to the hospital as directed in the discharge instructions, and that Ronnie
would have never suffered such massive bleeding if he had timely returned to
the hospital.





As to appellees= theory of Ronnie=s alleged contributory negligence, they assert that Ronnie had a duty
to follow Dr. Thota=s
instructions, which included a duty Ato return for evaluation and possible treatment if complications arose
post-discharge.@  Dr. Thota requested the submission of Ronnie=s negligence, despite the fact that Dr. Thota specifically testified
that he did not blame Ronnie for what had happened.[5]  According to Dr. Thota, Ronnie=s massive bleed was the result of a natural blood clot event or tear
that worsened only because of Ronnie=s delay in returning to the hospital. 
Dr. Thota provides no evidence of Ronnie=s contributory negligence in causing the tear.  Regardless, Dr. Thota=s premise is based upon Ronnie=s alleged negligence occurring after the tear, not Ronnie=s negligence in causing the tear.  The evidence supporting Dr. Thota=s theory of Ronnie=s contributory negligence blames Ronnie only for his breach of
duty in failing to follow Dr. Thota=s discharge instructions, which he contends resulted in the increased
bleeding.  Indeed, a review of the
evidence shows that Dr. Thota=s theory was that no party was responsible for a new or naturally
formed blood clot and tear but that all of Ronnie=s damages were a result of Ronnie=s failure to timely return to the hospital.  Again, contributory negligence goes to the
proximate cause of the original incident, and mitigation arises from an injured
party=s duty to act reasonably in reducing his damages.  See Hygeia Dairy Co., 994 S.W.2d at
226.  Thus, Dr. Thota points only to
Ronnie=s subsequent negligence that might have increased his damages
as opposed to Dr. Thota=s original
negligence.  Therefore, we conclude that
Ronnie=s negligence, if any, only increased the damages he suffered after the
catheterization or tear, as opposed to causing the Ainjury,@ Aaccident,@ or Aoccurrence@
itself.  See Moulton, 414 S.W.2d
at 448B49; Hygeia Dairy Co., 994 S.W.2d at 225.  

Response to Dissent





The dissent first contends
that we have erroneously described Ronnie=s injury as being the tear in his right external iliac artery.  Instead, the dissent contends that the injury
was the extensive bleeding from the puncture site.  This contention stands the whole trial on its
head by allowing a defensive issueCthe plaintiff=s alleged
failure to mitigate his damagesCto trump the plaintiff=s entire theory of the caseCthe defendant=s negligence
in placing the catheterization stick too high. 
The extensive bleeding and the resulting Acascade of complications@ are first the result of the negligent injury; the plaintiff=s alleged failure to timely return and seek medical intervention only
increased the damages the plaintiff suffered as opposed to causing them.  When 
the dissent says that the A>tear= was
relevant only because Dr. Walker=s report stated that he repaired a >tear= in Young=s artery after Young returned to the hospital,@ it totally undermines the sole theory of the plaintiff=s case and the case that was tried to this jury.  An appellate court cannot decide a case on a
theory different from the one that was pled and tried to the jury.  Loera v. Interstate Inv. Corp., 93
S.W.3d 224, 228 (Tex. App.CHouston [14th Dist.] 2002, pet. denied). 





In support of the majority=s position on what injury the plaintiff was actually suing for we note
the following.  A review of Paragraph 4.4
of Plaintiff=s Fourth
Amended Petition states quite clearly, AUnfortunately, Defendant Thota had torn the right iliac artery during
the cardiac catheterization, and had discharged Mr. Young from the hospital
while he was still bleeding internally.@  And in paragraph 5.1 it
states, ADr. Walker operated on Mr. Young to repair a bleed from the iliac
artery which had been lacerated and torn by Defendant Thota during the
catheterization . . . .@  And in paragraph VI it states that Defendants
Thota and NTCC were negligent in their treatment in that they

c.      negligently lacerated the right iliac artery during the
catheterization;

d.      failed to make a puncture at the correct location in the
femoral artery; [and]

e.      failed to discover the tear in the artery prior to discharging
him from the hospital.

 

Furthermore, the term Ainjury@ was not
given a special definition in the charge. 
The only general direction regarding the use of terms and words in the
charge was in paragraph seven which said, AWhen words are used in this charge in a sense that varies from the
meaning commonly understood, you are given a proper legal definition, which you
are bound to accept in place of any other meaning.@  See Kroger Co. v. Brown, No.
14-06-00510-CV, 2008 WL 2841615, at *2 (Tex. App.CHouston [14th Dist.] July 24, 2008, no pet.).  Because the word Ainjury@ was the
word used in the charge and because it was not given a special meaning within
the charge, we are to use its common meaning in light of the case that was
tried.  The case the appellant tried was
limited to one theory: the alleged negligence of Dr. Thota in placing the
catheterization stick too high; this was the injury the plaintiff alleged, and
the bleeding was the result of that injury.



 



The focus of the trial was on
what caused the tear.  Again, the dissent
boldly says, AThere [is]
no evidence that Dr. Thota caused the tear or that its existence was a causal
factor in any of Young=s bleeding
or subsequent complications.@  The actual record, and all the
experts, even Dr. Thota, agree and concede that wherever the tear was, that was
the puncture site; that the tear location and the puncture site were one and
the same; and that it was the site of the bleed.  Ronnie=s entire claim revolved around whether the stick was too high.





The dissent says the tear or
stick cannot be the Ainjury.@  Instead, it says the Ainjury@ is the
extensive bleeding from the puncture site into Ronnie=s retroperitoneal cavity.  While
it is true this happened, the extensive bleeding is more in the nature of the
resultant damage; the Atear@ is the Ainjury@ and the Ableed@ is the resultant damage.  But
for the tear, there would have been no bleed and therefore no damages.  Again, Anegligence that merely increases or adds to the extent of the loss or
injury occasioned by another=s negligence is not such contributory negligence as will defeat
recovery@ but is in the nature of negligence that contributes to the damages
sustained instead.  Kerby, 503
S.W.2d at 528.  Importantly, Dr. Thota=s only theory of liability asserted against Ronnie is his failure to
timely seek medical advice; Dr. Thota concedes the tear was at the puncture
site, that Ronnie did not cause the tear, and that Ronnie=s only misdeed was his failure to return to the hospital or to call
Dr. Thota.  Even if we, as the majority,
concede that as to Dr. Thota=s defensive theory the only injury is the bleed, this concession that the injury as to Ronnie was the tear and the
injury as to Dr. Thota was the extensive bleed would prove only that there were
two different theories of liability tried. 

The dissent says this case is
more closely analogous to Elbaor. 
Again, we disagree as shown by our discussion above.  In Elbaor, but for the patient=s refusal to take antibiotics, she would more likely than not have
ever gotten an infection, which occurred and caused her further injuries weeks,
months, and years after her initial car accident.  845 S.W.2d at 242.  Here, the Ainjury@ (or if one
prefers to call it the Aaccident@ or Aoccurrence@) is the tear; it occurred that morning during the catheterization
procedure, and the bleed occurred within hours of Ronnie=s dismissal.  The bleed would
have occurred with or without Ronnie=s delay in seeking medical advice; he would have required surgery to
repair the tear regardless.  Dr. Thota never
claimed that Ronnie caused the tear; there was only a claim that his damages
would have been far less significant had he sought medical intervention sooner.





In Elbaor, the patient
had undergone a surgical procedure on her ankle, two post-surgery wound
debridements and several hospital transfers. 
845 S.W.2d at 242.  The evidence
at trial showed that she had been uncooperative and noncompliant in taking the
prescribed antibiotics and that she had been free of infection post
operatively.  Id.  Her conduct contributed directly to her new
injuryCher infected ankle.  Id.  But for her refusal to take the medicine,
there may have been no infection.  Id.  Conversely, in Ronnie=s case, his failure to timely seek medical intervention was the basis
for the increased bleeding, but it did not even cause the bleeding.  It was the tear that caused the
bleeding.  And the bleeding is the sole
basis of Dr. Thota=s claim back
against Ronnie; it quite simply is in the nature of Ronnie=s failure to mitigate.





The dissent also contends
that there is ample evidence of Ronnie=s contributory negligence due to his failure to return to the hospital
sooner.  While we acknowledge that
patients owe a duty of cooperation to treating physicians who assume a duty of
care for them and that such a duty includes a duty to return for evaluation and
treatment, that duty does not justify the submission of Ronnie=s negligence in contributing to the injury; it merely justifies a
question on his failure to mitigate his damages.  See Jackson v. Axelrad, 221 S.W.3d
650, 654 (Tex. 2007); Gross v. Burt, 149 S.W.3d 213, 225B27 (Tex. App.CFort Worth
2004, pet. denied).  Again, Ronnie=s failure to return did not cause the tear, which was Ronnie=s theory of Dr. Thota=s negligence.  Ronnie=s failure to return to the hospital only increased his bleeding and
therefore his damages.  See Kerby,
503 S.W. 2d at 528 (stating, ANegligence that merely increases or adds to the extent of the loss or
injury occasioned by another=s negligence is not such contributory negligence as will defeat
recovery@).

Additionally, the dissent
makes note of our interchange of the terms, Ainjury,@ Aaccident,@ or Aoccurrence.@  This is a red herring that makes no
difference.  We clearly acknowledge that
the charge controls, and it used the term Ainjury.@   We have used the other terms only when
citing other cases that used Aaccident@ or Aoccurrence@ in their
charges.

The dissent also boldly
states, AYoung did not die from the complications and systems failures that
followed cardiac catheterization by Dr. Thota,@ as if his failure to die absolved the defendants from liability for
the survival action that appellant brought; she was pursuing a survival action
on behalf of her husband=s estate for
the torturous life he endured from the time of Dr. Thota=s catheterization until he died. 
See Tex. Civ. Prac. & Rem. Code Ann. '71.021 (Vernon 2008); Pack v. Crossroads, Inc., 53 S.W.3d 492,
515B16 (Tex. App.CFort Worth
2001, pet. denied).

For all of these reasons, we
conclude and hold that the trial court abused its discretion by submitting
Ronnie=s alleged contributory negligence to the jury instead of giving the
jury an instruction on Ronnie=s duty to mitigate his damages. 
We therefore sustain the part of appellant=s second issue challenging the submission of Ronnie=s contributory negligence.





Now we must conduct a harm
analysis on the erroneous submission of the jury question on Ronnie=s contributory negligence.

                                              Harm Analysis

Generally, the rules of
appellate procedure provide two bases for reversing an error of law.  Tex. R. App. P. 41.1, 61.1; Harris County
v. Smith, 96 S.W.3d 230, 234 (Tex. 2002). 
The error must be one which Aprobably caused the rendition of an improper judgment@C44.1(a) and 61.1(a)Cor the error must be one which Aprobably prevented the petitioner [appellant] from properly presenting
the case to the appellate courts@C41.1(b) and 61.1(b).  Tex. R.
App. P. 41.1, 61.1.  Casteel=s Apresumed harm@ charge
analysis has been limited to charge error in which erroneous theories of
liability or damages were mixed with valid theories and the reviewing court was
unable to determine whether the improperly submitted theories formed the sole
bases of the jury=s verdict or
damages.  Harris County, 96 S.W.3d
at 235B36; Crown Life Ins. Co. v. Casteel, 22 S.W.3d 378, 389 (Tex.
2000).  However, when the error simply
involves erroneous submission of inferential rebuttal instructions, Urista
tells us that we must show that the error caused rendition of an improper
judgment.  Bed, Bath and Beyond v.
Urista, 211 S.W.3d 753, 757 (Tex. 2006); see also Torres v.
Tessier, 231 S.W.3d 60, 63 n.2 (Tex. App.CHouston [14th Dist.] 2007, no pet.).







Here, there were two
competing theories of liability submitted within one broad-form liability
question that asked of the two primary actors= potential liability: one was valid and the other invalid.  Thus, Casteel=s presumed harm analysis applies. 
Casteel, 22 S.W.3d at 388B89.  The jury=s answers, finding no negligence attributable to Dr. Thota and all the
negligence attributable to Ronnie, commingled valid and invalid theories of
liability because there was no evidence of Ronnie=s negligence in causing the tear and no claim by Dr. Thota that Ronnie=s negligence caused the tear. 
While one might argue that we, as the appellate court, can still affirm
the jury=s verdict because it might have found that Dr. Thota was not
negligent, when looking at the jury charge in its entirety as we must, we
cannot know if the jury truly found Dr. Thota not negligent or whether the jury
excused any negligence attributable to Dr. Thota because of properly submitted
inferential rebuttal instructions. 
Therefore, to answer this question, we must also evaluate the propriety
of the challenged inferential rebuttal instructions; if the inferential
rebuttal instructions were erroneously submitted as well, then the jury=s no liability finding could also have been based on an incorrect
theory.  See id. at 389 (stating, AIt is essential that the theories submitted be authorized and
supported by the law governing the case . . . [and i]f they are not, the
appellate court must, at a minimum, be able to determine whether properly
submitted theories constituted the basis of the jury=s verdict@).

Unavoidable Accident





The court gave this defensive
instruction as to both Dr. Thota=s and Ronnie=s potential
negligence.  AAn unavoidable accident is >an event not proximately caused by the negligence of any party to it.=@  Reinhart v. Young, 906
S.W.2d 471, 472 (Tex. 1995); TXI Transp. Co. v. Hughes, 224 S.W.3d 870,
905 (Tex. App.CFort Worth
2007, pet. granted) (quoting Dallas Ry. & Terminal Co. v. Bailey,
151 Tex. 359, 250 S.W.2d 379, 385 (1952)). 
Usually, this instruction is included when there is a question of some
physical condition or circumstance that might obviate the necessity of finding
that some party is negligent.  Reinhart,
906 S.W.2d at 472.  This instruction is
also given when the evidence shows that the event was caused by some Anonhuman condition and not by the negligence of any party to the
event.@  Hill v. Winn Dixie
Tex., Inc., 849 S.W.2d 802, 803 (Tex. 1992).  Typically, it is used when some environmental
condition such as fog, snow, sleet, wet or slick pavement, or some obstruction
of view is involved.  Id.  Courts have also previously approved of an
instruction in situations of Aunexpected catastrophe@ or some Apeculiar
circumstance@ other than
the negligence of the parties.  Id.  ACourts should refrain from submitting an unavoidable accident
instruction in other circumstances due to the risk that the jury will be misled
or confused by the perception that the instruction represents a separate issue
distinct from general principles of negligence.@  Id.

While historically permitted
in the medical malpractice arena, Texas courts have required a defendant to Afirst present evidence that the event was caused by some condition
other than the negligence of the parties.@  Crawford v. Hope, 898
S.W.2d 937, 941 (Tex. App.CAmarillo 1995, writ denied). 
Only if the defendant comes forward with such evidence would a court be
required to submit this inferential rebuttal question in its charge.  Id. 
A trial court does not abuse its discretion by submitting the
instruction if there is any evidence to support it.  Kerr v. Brown, No. 07-05-00043-CV,
2007 WL 613847, at *2 (Tex. App.CAmarillo Feb. 28, 2007, pet. denied).





In this case, Dr. Thota
presented some evidence that the tear in Ronnie=s artery could have been a natural result of some of Ronnie=s diseases or could have come from a blood clot that formed and broke
away from the puncture site.  The trial
court could have determined that this was an unexpected catastrophe or event,
and although a human condition, not a human condition caused by the negligence
of either one of the parties.  Therefore,
we conclude that the trial court did not abuse its discretion by submitting the
unavoidable accident instruction as to both Dr. Thota and Ronnie and that this instruction
would have no effect on our harm analysis regarding the erroneous submission of
Ronnie=s contributory negligence.  See
generally Dillard v. Tex. Elec. Co-op., 157 S.W.3d 429 (Tex. 2005).

New and Independent Cause

Only Dr. Thota received the
benefit of a new and independent cause inferential rebuttal instruction.  This instruction is required only when the
evidence shows that Aan act or
omission of a separate and independent agency which destroys the causal
connection between the negligent act or omission of the defendant and the
injury complained of, and thereby becomes in itself, the immediate cause of
such injury@ has
occurred.  Hall v. Huff, 957
S.W.2d 90, 95 (Tex. App.CTexarkana
1997, pet. denied).  It is not an
affirmative defense but is a factor to be considered by the jury in determining
whether proximate cause exists.  James
v. Kloos, 75 S.W.3d 153, 161 (Tex. App.CFort Worth 2002, no pet.).  In
connection with an instruction on new and independent cause, a defendant must
show that the intervening cause destroys the causal connection between the
defendant=s alleged
negligence and the resultant injury.  Kloos,
75 S.W.3d at 161; Huff, 957 S.W.2d at 95.

In Kloos, we stated
that 



 



Texas
courts distinguish between a new and independent cause and a concurrent
act.  A concurrent act cooperates with
the original act in bringing about the injury and does not cut off the
liability of the original actor.  A new
and independent cause, sometimes referred to as a superseding cause, however,
is an act or omission of a separate and independent agency that destroys the
causal connection between the negligent act or omission of the defendant and
the injury complained of . . . .  An
intervening cause that is reasonably foreseeable by the defendant,
though, is not a new and independent cause that breaks the chain of causation.

 

75 S.W.3d at 161 (citations omitted) (emphasis
added).  Because a new and independent
cause Aextinguishes the liability of a party[, it] cannot arise out of an
affirmative act of negligence by either the plaintiff or the defendant.@  Biaggi v. Patrizio Rest.,
Inc., 149 S.W.3d 300, 305 (Tex. App.CDallas 2004, pet. denied).  It
is also clear that Amerely
guessing at possible causes@ is insufficient; medical expert testimony that goes Ano further than to testify that certain intervening events could
have caused@ an injury
is Aequivocal testimony@ that is insufficient to warrant an instruction on new and independent
cause.  Hersh v. Hendley, 626
S.W.2d 151, 157 (Tex. App.CFort Worth 1981, no writ) (emphasis added).





Here, the trial court
instructed the jury, as to Dr. Thota only, that a new and independent cause may
be the Aact or omission of a separate and independent agency, not reasonably
forseeable by a cardiologist . . . that destroys the causal connection
. . . and thereby becomes the immediate cause of such injury.@  All parties agreed to the
standard of care for a cardiologist performing a catheterization:  to insert the needle and catheter into the
right femoral artery, as opposed to the right external iliac artery.  The issue here was not what the appropriate
standard of care was but whether Dr. Thota breached that standard and whether
that breach was what caused Ronnie=s retroperitoneal bleed.  The
evidence, including the evidence provided by the surgeon who repaired the
bleed, was that the arterial tear and hematoma occurred at the puncture site in
the external iliac artery.  This evidence
was corroborated by Dr. Sudarshan, Dr. Thota=s partner who helped care for Ronnie that night, and by Dr. Doherty,
appellant=s expert
witness.

Moreover, Dr. Thota
specifically agreed that the bleeder site had to be at the original puncture
site; he simply claims that the tear was a result of a dislodged clot and that
the extensive bleeding was the result of Ronnie=s failure to return.  While Dr.
Doherty concedes that it is a possibility that a clot over the site
could have dislodged, there is no evidence that this was what actually
happened; a possibility is not enough.  See
id. at 157.

Regardless, both subsequent
dislocation of a clot over the puncture site and bleeding from the puncture
site are foreseeable risks in a catheterization procedure.  Thus, neither is a new and independent cause
but rather a potential concurring cause. 
Therefore, we hold that it was error to submit an instruction on new and
independent cause on either of these theories as to Dr. Thota.





Appellees also argue that the
claimed failure of both Ronnie and appellant to timely seek medical
intervention after the procedure constituted a new and independent cause.  However, as noted above, we may not look to
or consider appellant=s claimed
negligence in not assisting her husband with timely seeking medical help after
the procedure, and we may not consider Ronnie=s claimed negligence because his negligence would not be that of a
nonparty or a third person.  Moreover, we
cannot say that a patient=s failure to
follow discharge instructions is a new and independent cause because such a
failure is also reasonably foreseeable.  See
Knoll v. Neblett, 966 S.W.2d 622, 634 (Tex. App.CHouston [14th Dist.] 1998, pet. denied).  Therefore, we conclude and hold that the
trial court abused its discretion by submitting an instruction on new and independent
cause in connection with Dr. Thota=s alleged negligence.  We now
return to our harm analysis.





Our question now becomes,
what is the effect of an improperly submitted contributory negligence question
with a properly submitted negligence question in conjunction with a properly
submitted unavoidable accident instruction and an improperly submitted new and
independent cause instruction?  In other
words, which harm analysis do we apply when we have hybrid charge error?  Are we to apply the presumed harm test of Casteel
to the improperly submitted jury question on Ronnie=s contributory negligence yet apply the traditional harm analysis of Urista
to the incorrectly submitted instruction on new and independent cause?  Urista, 211 S.W.3d at 756B57; Casteel, 22 S.W.3d at 389. 
We believe the answer can be found in the supreme court=s own words, A[A]lthough
harm can be presumed when meaningful appellate review is precluded because
valid and invalid theories or damage elements are commingled [Casteel],
we are not persuaded that harm must likewise be presumed when proper
jury questions are submitted along with improper inferential rebuttal
instructions.@  Urista, 211 S.W.3d at 757 (emphasis
added).  The Urista court=s use of the words, Aproper jury questions,@ is key to the analysis here; in Urista the sole negligence
theoryCthat of the defendant=s negligenceCwas properly submitted.  Id.  Thus in Urista, there was only one
negligence theory submitted and it was proper, so the erroneous submission of
the inferential rebuttal instruction was easily determined to be harmless in
light of the entire state of the evidence and the charge.  Id. 
Here, however, the jury was not only given an erroneous defensive  instruction on new and independent cause that
benefitted only Dr. Thota but also an erroneous jury question on liabilityCRonnie=s
contributory negligenceCa theory not
supported by the evidence.  So, we should
not be limited to Urista=s traditional harm analysis when trying to
determine the impact of the improperly submitted instruction on new and
independent cause when combined with the improperly submitted question of
Ronnie=s contributory negligence.  We
simply cannot determine, on this evidence, whether the jury properly found Dr.
Thota not negligent, properly found that his negligence was excused based upon
the unavoidable accident instruction, or improperly found that his negligence
was excused based upon the new and independent cause instruction alone or
combined with its improper finding of Ronnie=s negligence. 

Response to Dissent=s Critique of Our Harm Analysis

Now, in response to many of
the claims made by the dissent, we do not agree that the jury Aseparately@ and clearly
found Ano@ as to
whether any negligence of Dr. Thota was a proximate cause of Ronnie=s injury.  It was a broad-form
liability submission question that erroneously submitted one proper liability
question (Dr. Thota=s) and one
improper liability question (Ronnie=s) and obscured the effect of such an erroneous question with the submission
of at least one erroneous defensive instruction that was completely at odds
with the facts of the case, the evidence submitted, and the battle fought by
the experts in the case.  More
importantly, the submission fails to track the pleadings of the case and the
evidence and theories that were actually pursued during the trial of the case.





The dissent says that the
majority has sua sponte incorrectly applied Casteel=s Apresumed harm@ analysis even
if we assume the trial court erred in submitting the question of Ronnie=s contributory negligence and giving Dr. Thota an inferential rebuttal
instruction on new and independent cause. 
However, it is not just that combination that requires us to presume
harm but the incorrect submission of one correct theory of liabilityCDr. Thota=s negligenceCwith one incorrect theory of liabilityCRonnie=s alleged
contributory negligenceCwhich,
according to Casteel, when submitted in one broad-form liability
instruction requires us to presume harm. 
22 S.W.3d at 389.  Because Ronnie=s theory of negligence against Dr. Thota is based upon the tear and
because Dr. Thota=s theory of
negligence against Ronnie is based upon Ronnie=s failure to timely seek medical help, it is quite clear that Ronnie=s alleged contributory negligence could not have avoided Dr. Thota=s initial negligence; it could only have reduced the damages Ronnie
suffered. 

The dissent also contends
that we are reversing on unassigned error apparently just because appellant=s brief does not specifically cite to Casteel.  Her brief does, however, cite Wal-Mart
Stores, Inc. v. Johnson, 106 S.W.3d 718, 723 (Tex. 2003) and quite plainly
focuses on its primary point on appeal:

[B]ecause
this instruction (unavoidable accident) was premised on a different >injury= (an
alleged clot breaking loose) than were the >contributory negligence=
question and >new
and independent cause=
instruction, it is a near certainty that it served to confuse the jury such
that it led to the rendition of an improper judgment.

 





Appellant also noted in her original briefing, AThe submission of this instruction probably caused the rendition of an
improper judgment,@ also citing
Wal-Mart.  Thus, we believe the
issue of the correct harm analysis to apply to properly preserved charge error
is properly before us.





Next, the dissent also
contends that solely because contributory negligence is an affirmative defense
it is not its own theory of liability and that we are wrong when we hold that
the first jury question combines a proper liability question (Thota=s negligence) and an improper liability question (Ronnie=s contributory negligence). 
Remarkably, the dissent itself bases its theory of Ronnie=s negligence on his breach of a duty to timely return to the hospital
and that this is the proximate cause of Ronnie=s bleeding, which the dissent says is the Ainjury@ instead of
the damages.  But according to Axelrad,
AThe rules which determine the contributory negligence of a plaintiff
are . . . the same as those which determine the negligence of the defendant.@  221 S.W.3d at 657 (quoting
Restatement (Second) of Torts '' 289 cmt. a, 464).  A[D]uty is an element of contributory negligence.@  Nat=l Union Fire Ins. Co. of Pittsburgh, Pa. v. Ins. Co. of N. Am., 955 S.W.2d 120, 136 (Tex. App.CHouston [14th Dist.] 1997), aff=d, 205 S.W.3d 692 (2000).  Contributory negligence is and always has
been negligence on the part of a plaintiff that is a breach of a duty, owed to
oneself, that supersedes the causation of damages to oneself.  Id. 
Just because it is raised as an affirmative defense does not mean it is
not its own theory of liability that does not have to be proved by the
defense.  Although Dr, Thota testified
that he did not blame Ronnie, his defensive theory was that Ronnie did not
follow Dr. Thota=s discharge
instructions and that Ronnie should have called Dr. Thota or returned to the
emergency room earlier in the evening; that, if he had, he would not have bled
as much.  Dr. Thota never said that
Ronnie would have never received the tear in his right iliac artery.  In fact, he acknowledged that there was a
tear.  He even admitted it was at the
puncture site, i.e., where he inserted the catheter.  He just denied where that insertion was and
its cause.  Importantly, his theory of
liability against Ronnie, however, was based solely upon Ronnie=s failure to timely seek medical intervention; he says this is the
cause of the extensiveness of the bleed, which is the basis of his allegation
of Ronnie=s
negligence.





By arguing that only one
theory of liability was submitted in jury question number one, albeit in two
subparts, the dissent attempts to force the defense=s theory of liability for injury onto Ronnie=s theory of liability against Dr. Thota.  In other words, the dissent attempts to force
the defense=s theory of
injury (the extensive bleeding) on to Ronnie=s theory of injury (the tear). 
Because these two theories of negligence were commingled in one
broad-form question, one incorrect and one correct, there was harm.  See Casteel, 22 S.W.3d at 388B89.  Moreover, the incorrect
submission of Ronnie=s alleged
contributory negligence was exacerbated by the additional incorrect instruction
on new and independent cause that Dr. Thota received.  It is the combination of these two incorrect
theories that prevents us from being able to determine whether the jury=s finding of no liability as to Dr. Thota was a finding of no
negligence on his part, an erroneous finding of contributory negligence on
Ronnie=s part, or an erroneous finding of new and independent cause.

Importantly, we are not
trying to extend Casteel=s presumed harm analysis to defensive
theories; we are applying it to a single broad-form question that erroneously
includes two different theories of liability. 
This error is only exacerbated by the erroneous defensive instruction of
new and independent cause.

                                                Conclusion



 



A[A] litigant
today has a right to a fair trial before a jury properly instructed on the
issues >authorized and supported by the law governing the case.=@  Harris County, 96
S.W.3d at 234 (quoting Casteel, 22 S.W.3d at 389).  We therefore conclude that the trial court
erred by overruling appellant=s objections to the charge regarding submission of Ronnie=s contributory negligence and the new and independent cause
instruction.  Because these instructions
likely caused rendition of an improper judgment or, at least, prevented
appellant from properly presenting her case on appeal, we conclude  that such error was harmful.  See Tex. R. App. P. 44.1.  We therefore reverse and remand for a new
trial.

Because we have found trial
court error in the charge sufficient to cause harm requiring reversal, we need
not reach appellant=s other
issues on appeal.  See Tex. R.
App. P. 47.1.  We reverse the judgment of
the trial court and remand the cause to the trial court for a new trial.  Tex. R. App. P. 43.2(d).

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL: 
LIVINGSTON, GARDNER, and MCCOY, JJ.

GARDNER, J. filed a dissenting opinion.

DELIVERED: 
November 20, 2008













 
 
 
 
 
 
 




 

 

 

 

 

 

                                        COURT
OF APPEALS

                                         SECOND
DISTRICT OF TEXAS

                                                     FORT
WORTH

 

 

                                           NO.  2-05-350-CV

 

 

MARGARET YOUNG, INDIVIDUALLY AND                               APPELLANT

AS
REPRESENTATIVE OF THE ESTATE OF 

WILLIAM
R. YOUNG

                                                      V.

 

VENKATESWARLU THOTA, M.D. AND                                    APPELLEES

NORTH
TEXAS CARDIOLOGY CENTER

 

                                                  ------------

 

              FROM
THE 30TH DISTRICT COURT OF WICHITA COUNTY

 

                                                  ------------

 

                                     DISSENTING
OPINION

 

                                                  ------------



 



I think the trial court got
the jury charge right.  But even assuming
error in submission of both contributory negligence and the new and independent
cause instruction, I disagree that the Apresumed harm@ analysis of
Casteel applies.  The jury
separately found Ano@ as to whether any negligence of Dr. Thota was a proximate cause of
William R. (ARonnie@) Young=s
injury.  Examination of the entire record
shows that the jury was faced with a Abattle of experts@ as to Dr. Thota=s
negligence.  It is probable that the jury
resolved the conflicts in testimony in favor of Dr. Thota in refusing to find
that he was negligent.  There is no clear
indication that the jury was influenced by the new and independent cause
instruction.  I would hold that even if
there was error in the charge, it probably did not result in an improper
judgment.  Therefore, I must dissent.

I.       BACKGROUND INFORMATION

It was undisputed that Ronnie
had extensive pre-existing medical conditions including chronic obstructive pulmonary
disease, cardiac disease with hypertension, and a completely occluded right
coronary artery diagnosed in 1992 when he had a previous cardiac
catheterization.  As the majority notes,
he had also been diagnosed with polycythemia vera (APV@), a rare,
incurable bone marrow disorder resulting in overproduction of blood cells, for
which he had been treated with bi-monthly phlebotomy and numerous medications,
including interferon.





Ronnie presented to Dr. Thota
with complaints of severe angina.  Dr.
Thota recommended the second diagnostic cardiac catheterization in February
2002 to determine if a new blockage had developed.  That Dr. Thota=s recommendation was reasonable and appropriate was undisputed.  Preoperative laboratory studies were
acceptable for Ronnie to undergo the procedure. 
According to Dr. Cooper, Ronnie=s treating hematologist before and after the procedure performed by
Dr. Thota, any person with PV will have an increased risk of both bleeding and
clotting complications even if everything is optimally controlled.

Ronnie did not die from the
complications and systems failures that followed the cardiac catheterization by
Dr. Thota.  PV is a form of cancer; if a
person lives long enough with it, they will develop leukemia, as Ronnie
did.  Ronnie was diagnosed with leukemia
in October 2004 and died from that disease on March 10, 2005.  His widow prosecuted this suit as a survival
action on behalf of his estate.

II.      CONTRIBUTORY NEGLIGENCE
WAS PROPERLY SUBMITTED.

A.     The Ainjury@ was not the
Atear@ in the
artery.





As a preliminary matter, I
disagree that the Ainjury@ to Ronnie that was the basis for liability sought against Dr. Thota
was the Atear@ in Ronnie=s artery.  There was no evidence
that Dr. Thota caused the tear or that its existence was a causal factor in any
of Ronnie=s bleeding
or subsequent complications.  Appellant=s theory of liability was that Dr. Thota incorrectly placed the
puncture site for the catheterization. 
The Ainjury@ was extensive bleeding from the puncture site into Ronnie=s retroperitoneal cavity and the cascade of complications he suffered
thereafter.  The Atear@ was
relevant only because Dr. Walker=s report stated that he repaired a Atear@ in Ronnie=s artery after Ronnie returned to the hospital, from which the expert
witnesses sought to determine the location of the puncture site.

This distinction is
important.  Dr. Thota=s theory of Ronnie=s contributory negligence was that Ronnie failed to follow his
instructions to call him or to return to the hospital when he began to suffer
severe pain.  The majority says this
conduct merely increased his injuries as opposed to causing the Aaccident@ or Aoccurrence.@  In so doing, the majority focuses on the word
Atear@ to try to
pinpoint the Aaccident@ or Aoccurrence.@

B.      The jury was not asked about an Aaccident@ or Aoccurrence.@





Despite its protestations
otherwise, I believe the majority confuses Ainjury@ with Aaccident@ or Aoccurrence@ in
analogizing this case to Moulton v. Alamo Ambulance Serv., Inc., 414
S.W.2d 444, 449 (Tex. 1967) (holding exclusionary instruction on mitigation
rather than contributory negligence question proper based on plaintiff=s failure to follow medical advice that merely aggravated damages
received in auto accident), and Kerby v. Abilene Christian College, 503
S.W.2d 526, 528 (Tex. 1973) (holding trial court erroneously submitted
contributory negligence instead of mitigation instruction where plaintiff=s negligence in leaving van door open did not contribute to cause
collision but, at most, could only have increased or added to extent of loss or
damage).  Jury Question No. One on
liability (as well as the conditioned and unanswered questions as to
apportionment of responsibility and damages) did not ask about any Aaccident@ or Aoccurrence@ but
expressly inquired as to whether negligence of Dr. Thota or Ronnie proximately
caused Ronnie=s Ainjury.@

C.     Contributory negligence that contributed to
the Ainjury@ was
properly submitted.

  

This case more closely
resembles Elbaor v. Smith, 845 S.W.2d 240, 245 (Tex. 1992).  Unlike the facts in Moulton and Kerby,
the supreme court in Elbaor emphasized that the Aaccident@ in Elbaor
Aequates to the medical problem complained of:  Ms. Smith=s infected ankle.  Her conduct
[refusing to take antibiotics as ordered] arguably did contribute to the
infection. . . . [T]here might have been no infection, and thus no claim for
medical malpractice, had Ms. Smith followed her doctor=s instructions.@  845 S.W.2d at 245.  Because Dr. Elbaor pleaded that Ms. Smith was
contributorily negligent in refusing to take her antibiotics and because there
was evidence supporting his assertion that her refusal contributed to her
injury, the court held that a contributory negligence question should have been
submitted, rather than an instruction on mitigation of damages.  Id.





Like the infection of Ms.
Smith=s ankle in Elbaor, any Aaccident@ here
equated to Ronnie=s injury,
the retroperitoneal bleeding and subsequent complications, not the Atear.@  Ronnie=s conduct arguably did contribute to his injury, i.e., the bleeding
and subsequent consequences, like Ms. Smith=s conduct in Elbaor and unlike that in Moulton and Kerby.





The trial court correctly
followed the current Pattern Jury Charge standard questions for negligence and
contributory negligence, using Ainjury,@ rather than
Aoccurrence@ or Aaccident@ in this
case.[6]  The jury question recommended by the Pattern
Jury Charge provides for alternatives of Aoccurrence,@ Ainjury,@ or Aoccurrence or injury@ in the form for submitting 
contributory negligence when there is evidence of a plaintiff=s negligence that is injury-causing or injury-enhancing but not
occurrence-causing.  Comm. on Pattern
Jury Charges, State Bar of Texas, Texas Pattern Jury Charges:  General Negligence & Intentional Personal
Torts PJC 4.1 & cmt. (2006); see also Comm. on Pattern Jury Charges,
State Bar of Texas, Texas Pattern Jury Charges: Medical Malpractice PJC 51.1
& cmt. (2006).  The PJC Committee=s comments state that

use
of >occurrence= or >injury=. . .
could affect a case in which there is evidence of the plaintiff=s
negligence that is >injury-causing=. . .
but not >occurrence-causing=: for
example, carrying gasoline in an unprotected container which exploded in the
crash. . . or failing to follow doctor=s
orders during recovery, thereby aggravating the injuries (post-accident
negligence).  In such
a case the jury should not consider this negligence in answering the [liability
and proportionate responsibility questions] if >occurrence= is
used, while it should consider the negligence if >injury= is
used.

 

PJC
4.1 cmt. (emphasis added).[7]  The PJC comments also state that, if the
liability question for negligence and contributory negligence is submitted with
the term Ainjury,@
rather than Aoccurrence@ or Aaccident,@ the
exclusionary instruction for mitigation of damages should not be
submitted.  PJC 4.1, 8.9 cmt; see also
PJC 51.1, 80.9 cmt.  Under the evidence
in this case, the issue was whose negligence, if any, caused or contributed to
the Ainjury,@ not
who or what caused an Aaccident@ or Aoccurrence.@

 

D.     Ample evidence supported the submission and
finding of contributory negligence.



 



In Elbaor, the supreme
court recognized a duty of cooperation that patients owe treating physicians
who assume the duty to care for them. 
845 S.W.2d at 245.  The court held
that evidence of the patient=s failure to take the antibiotics prescribed for her required
submission of a question on contributory negligence.  Id. 
The duty to cooperate also includes the duty to return for evaluation
and possible treatment if complications arise post-discharge.  See Jones v. Lurie, 32 S.W.3d 737, 743
(Tex. App.CHouston
[14th Dist.] 2000, no pet.) (holding evidence plaintiff ignored physician=s orders to remain in psychological treatment centers and hospitals
factually sufficient to support 100 percent contributory negligence finding); Eoff
v. Hal & Charlie Peterson Found., 811 S.W.2d 187, 191 (Tex. App.CSan Antonio 1991, no writ) (holding evidence factually sufficient to
support 100 percent contributory negligence finding based on evidence plaintiff
voluntarily left hospital before receiving emergency treatment, ignored advice
of physician to return to ER, and failed to obtain medical care for seven hours
after leaving hospital).





Ronnie had previously
undergone a cardiac catheterization and was aware of normal postprocedure
discomforts.  He was given written
discharge instructions to return if he had any of several listed symptoms,
including Apain@ or Aany
problems.@  In his deposition, Ronnie admitted he
experienced a severe pain in his groin at 6:00 p.m., so severe he had to bend
over and hold himself, and that it was obvious to his eleven-year-old son, who
reported to his mother that Ronnie Awent down.@  He testified that shortly afterwards, he felt
worse and experienced backache and nausea.

Those symptoms were different
from what Ronnie had experienced after his first catheterization.  By 9:00 p.m., he was hurting so much in his
back and stomach that he could not get out of his recliner when his wife got
home.  The pain worsened until he fell
out of the recliner in Aexcruciating
pain@ at about 11:00 p.m., screamed to his wife, and lay in a fetal
position.  Despite the progression of
symptoms, Ronnie did not call Dr. Thota or seek help and, even at 11:00 p.m.,
refused his wife=s pleas to
call a neighbor or 9-1-1.  According to
the ambulance records, it was 12:43 a.m. when they received the call to
respond.





Dr. Thota testified that,
with the knowledge Ronnie possessed about his condition as well as from his
prior cardiac catheterization, he should have called for help by 6:00 p.m.  Dr. Doherty agreed that, with the problems of
nausea and backache Ronnie was experiencing, sometimes referred to as Aflank pain,@ Ronnie
should have called for help at 6:00 p.m. or at least by 9:00 p.m.  Dr. Doherty further testified on
cross-examination that, based upon his review of the cath log notes, Dr. Thota=s notes, and those of the nurses who cared for Ronnie after the
procedure, there was a ninety-nine percent chance that Ronnie was not bleeding
when he was discharged at 2:40 p.m.  Dr.
Doherty believed the bleeding started at about 9:00 p.m. and stated Ronnie had
lost three units of blood by the time he got to the operating room.  If Ronnie had gone to the hospital, sought
medical care, or called Dr. Thota at 6:00 p.m., or even by 9:00 p.m., Dr.
Doherty said, he likely would have avoided or lessened all of the serious
complications, including the shock leading to the coagulopathic state that led
to the additional problems, including Ronnie=s gangrenous gallbladder, which required five months of
hospitalization and recovery.

Dr. McCracken, Appellant=s causation expert, also acknowledged that Ronnie probably would not
have experienced any of the complications if the bleeding had been recognized
earlier and treated.  Moreover, Dr.
Doherty agreed that if Ronnie had gone to the hospital at 6:00 p.m., he could
have had the Ableeder@ repaired as it was or intravascularly with a stent, for which Dr.
Thota had the necessary training.





I would hold that the trial
court correctly submitted the PJC=s standard jury question on negligence and contributory negligence in
Jury Question No. One, rather than an exclusionary instruction on mitigation of
damages, that there was ample evidence that Ronnie=s failure to follow Dr. Thota=s instructions to call or to return to the hospital if he had any
problems or pain supported the submission of contributory negligence, and that
Ronnie=s contributory negligence was a proximate cause of his injury.

III. 
HARM ANALYSIS

A.     Casteel Apresumed error@ analysis does not apply.





Even if the trial court erred
by submitting both the jury question on contributory negligence and the
instruction on new and independent cause, I disagree with the majority=s sua sponte application of the Apresumed harm@ analysis
adopted in Crown Life Ins. Co. v. Casteel, 22 S.W.3d 378 (Tex. 2000).[8]  In Casteel, the supreme court held
that A[w]hen a single broad-form liability question erroneously commingles
valid and invalid liability theories and the appellant=s objection is timely and specific, the error is harmful when it
cannot be determined whether the improperly submitted theories formed the sole
basis for the jury=s finding@ because the appellant is thereby prevented from properly
demonstrating the consequences of the erroneous submission on appeal.  Id. at 389; see also Tex. R.
App. P. 44.1(b); 61.1(b).  

In Harris County v. Smith,
the court extended Casteel to a broad-form question that improperly
commingled damage elements when one of those elements was supported by no
evidence.  96 S.W.3d 230, 235 (Tex.
2002).  In Romero v. KPH Consol., Inc.,
the court further extended Casteel to a single broad-form question that
included a theory of liability supported by no evidence.  166 S.W.3d 212, 227B28 (Tex. 2005).





The majority says we cannot
determine whether the jury truly found Dr. Thota not negligent or improperly
relied on the contributory negligence submission.  I disagree. 
The theories of negligence and contributory negligence here were not
improperly Acommingled.@  There were two separate answer
lines provided to the jury to answer Ayes@ or Ano@ as to Dr.
Thota and Ayes@ or Ano@ as to Ronnie.  The jury
answered Ano@ as to Dr. Thota and Ayes@ as to
Ronnie.  In contrast, in Casteel,
the jury question instructed the jury on thirteen independent grounds of
liability but requested only a single answer. 
22 S.W.3d at 387.  Similarly, in Harris
County, the damages question complained of instructed the jury that it
could consider various elements of damages, including an element supported by
no evidence, in awarding a single amount of damages.  96 S.W.3d at 231.  Likewise, in Romero, the jury was
improperly allowed to apportion responsibility among the defendants in a single
answer based upon either an unchallenged finding of ordinary negligence or an
affirmative finding on a theory of malicious credentialing for which there was
no evidence.  166 S.W.3d at 215.  The jury=s single answer in each of those cases is what made it impossible to
determine whether the verdict was based upon the improperly submitted theory or
element of damages.

Here, the negligence of Dr.
Thota and that of Ronnie were submitted Aseparately,@ albeit in
the same question.  We are thus able to
determine that the jury=s finding as
to Dr. Thota was not based on an improper submission of contributory negligence
because there are two separate answers. 
Combining two questions into one with separate answer lines simply does
not constitute a commingling that triggers the Apresumed harm@ analysis.[9]





I also cannot agree that the
jury question here submitted two competing Atheories of liability.@  Contributory negligence is not
a theory of liability; it is an affirmative defense.  See Tex. R. Civ. P. 94.  The jury question in this case was a
universally used, standard broad-form submission of only one theory of
liability C
the
negligence of Dr. Thota
C
along with the
defense of contributory negligence, as recommended by the PJC.  Comm. on Pattern Jury Charges, State Bar of
Texas, Texas Pattern Jury Charges: Medical Malpractice PJC 51.3 (2006).   The supreme court has never extended Casteel
to defensive theories.

In Bed, Bath & Beyond
v. Urista, 211 S.W.3d 753, 757 (Tex. 2006), the supreme court noted that it
had limited its holdings in Casteel and Harris County to Amultiple theories of liability or multiple damage elements@ and that it had Anever extended a presumed harm rule to instructions on defensive
theories@ and refused to extend Casteel to the Adefensive theory@ of
unavoidable accident, stating: A[U]navoidable accident is not an alternative theory of liability but
is >an inferential rebuttal issue. . . .@





As to the inferential
rebuttal instruction on new and independent cause, the majority recognizes that
Urista held that improper submission of an inferential rebuttal
instruction is not subject to the Apresumed error@ analysis
under Casteel.  But it then
concludes that we must nevertheless presume harm here because we cannot
determine whether the jury improperly relied on the new and independent cause
instruction alone or combined with the contributory negligence submission.  I believe the majority opinion conflicts with
both Casteel and Urista in applying a Apresumed harm@ analysis
based on some hybrid theory.  Even
assuming that contributory negligence and new and independent cause were both
improperly submitted, two errors that do not trigger a Apresumed harm@ analysis do
not equal one that does.  I think we must
apply the traditional harm analysis.  See
Tex. R. App. P. 44.1(a).  Under that
analysis, error in the jury charge requires reversal only if, after considering
the record as a whole, including the pleadings, the evidence, and the charge in
its entirety, we conclude that the error probably resulted in an improper
verdict.  See Island Recreational Dev.
Corp. v. Republic of Tex. Sav. Ass=n, 710 S.W.2d 551, 555 (Tex. 1986); Wal-Mart
Stores, Inc. v. Redding, 56 S.W.3d 141, 149 (Tex. App.CHouston [14th Dist.] 2001, pet. denied).

B.      The traditional harm
analysis applies to the jury question.





Under Casteel, it is
still the law that when questions are submitted in a manner that does allow the
appellate court to determine that the verdict was actually based on a valid liability
theory, which is the case here, the error may be harmless under the traditional
harm analysis.  22 S.W.3d at 389.  ASubmisssion of an improper jury question can be harmless error if the
jury=s answers to other questions render the improper question immaterial.@  City of Brownsville v.
Alvarado, 897 S.W.2d 750, 752 (Tex. 1995). 
A jury question is immaterial when its answer cannot alter the effect of
the verdict.  Id. (holding any
error in submitting deceased=s negligence in jury charge was harmless; once jury found defendant
not negligent, its finding that deceased was negligent could not have altered
effect of verdict); see also Boatland of Houston, Inc. v. Bailey, 609
S.W.2d 743, 749B50 (Tex.
1980) (holding potentially improper submission of defensive issues harmless
when jury found for defendant on independent grounds); Hernandez v. Atieh,
No. 14-06-00582-CV, 2008 WL 2133193, at *3, 4 (Tex. App.CHouston [14th Dist.] May 20, 2008, no pet.) (mem. op.) (holdingCwhen finding of no liability of defendant supported by evidence C
once jury found defendant not negligent, submission of additional
person as responsible third party in negligence question harmless); Hutchison
v. Pharris, 158 S.W.3d 554, 567B68 (Tex. App.CFort Worth
2005, no pet.) (holding finding of claimants= contributory negligence harmless when jury=s failure to find defendants= negligence was proximate cause of injury was supported by evidence).

C.     The traditional harm analysis applies to jury instruction.





Likewise, to determine
whether submission of an instruction probably caused an improper judgment and
was, therefore, harmful error, we must examine the entire record.  Urista, 211 S.W.3d at 757 (citing Timberwalk
Apartments Partners, Inc. v. Cain, 972 S.W.2d 749, 756 (Tex. 1998)); Quantum
Chem. Corp. v. Toennies, 47 S.W.3d 473, 480 (Tex. 2001); see also
Tex. R. App. P. 44.1(a).  Specifically,
when the record provides Ano clear
indication@ that the
jury relied upon an improper inferential rebuttal instruction, Urista
instructs us that we must ordinarily conclude the error is harmless.  211 S.W.3d at 758B59.  When, as in this case, the
jury makes a negative finding as to liability and, under the evidence, could
reasonably have concluded that the plaintiff failed to carry its burden to
establish defendant=s negligence
rather than relying upon such an instruction, submission of an improper
inferential rebuttal instruction is ordinarily harmless error.  Id. at 757B59 (holding unavoidable accident submission harmless when
cross-examination discredited plaintiff=s claims and evidence failed to indicate result would have been
different absent instruction); Reinhart v. Young, 906 S.W.2d 471, 473
(Tex. 1995) (holding unavoidable accident instruction harmless when ample
evidence supported finding of no negligence by defendant, witnesses did not
refer to term, counsel made little mention of it in closing, sudden emergency
was also submitted without objection, and verdict was unanimous); Torres v.
Tessier, 231 S.W.3d 60, 64 (Tex. App.CHouston [14th Dist.] 2007, no pet.) (holding sudden emergency
instruction harmless when jury could reasonably have failed to find causation
or damages based on credibility determinations regarding evidence without
regard to instruction); see also Eoff, 811 S.W.2d at 193 (holding new
and independent cause instruction harmless when jury found plaintiff 100
percent contributorily negligent).

D.     Any charge error was harmless in light of
evidence supporting jury=s finding of Ano@ as
to negligence of Dr. Thota and in light of the entirety of the record.







There was evidence from the
medical records as well as the testimony of Dr. Thota, with which Dr. Doherty
agreed, that good Ahemostatis@ was most likely obtainedCmeaning the initial bleeding from the catheterization stick had been
stopped by applied pressure and a blood clot had formed, that Ronnie had no
pain and a good pulse, indicating that Ronnie was stable by the time he left
the hospital at 2:40 p.m., and that the Ainjury@ complained
ofCextensive bleeding, shock, and multi-organ failureCdid not begin until several hours after he left the hospital.  Dr. Thota testified that the extensive
bleeding caused by the clot being dislodged was a complication he could not
predict at the puncture site where the clot had formed earlier.  Dr. Doherty agreed that there was an Aevent@ that caught
Ronnie=s attention at 6:00 p.m. and a progressive deterioration after that
time.

When Ronnie returned to the
hospital=s emergency room  at
approximately 1:15 a.m., he was seen by Dr. Thota=s partner, Dr. Sudarshan.  A CT
scan was done, described by Dr. Sudarshan in his report as showing apparent
bleeding from an external iliac artery puncture site but with a finding that
the site was at Aabout@ the iliac ligament.  The
operative report of Dr. Walker, who operated on Ronnie that night, described a Ahigh tear@ of the
right external iliac artery that had bled into the retroperitoneal cavity,
forming a large hematoma.  Neither Dr.
Sudarshan nor Dr. Walker testified.  The
experts who did testify based their opinions largely on their respective
interpretations of Dr. Sudarshan=s and Dr. Walker=s written
reports.





The testimony of those
experts conflicted.  Dr. Doherty
testified on behalf of Appellant that the standard of care for the cardiac
catheterization was to insert the needle and catheter into the right femoral
artery below the inguinal ligament.  In
Dr. Doherty=s opinion,
Dr. Thota made the puncture for the cardiac catheterization in the wrong
location, above the inguinal ligament into the right external iliac artery,
rather than below that ligament into the femoral artery.  Dr. Doherty supported his opinion by the fact
of the bleeding into the retroperitoneal area, which could occur with a
puncture that is too high, rather than into the groin, where the bleeding could
have been discovered quickly and corrected.





Dr. Thota testified on his
own behalf that he met the standard of care, that he did not and could not make
a stick into the external iliac artery because he would not feel the pulse at
that point.  See Hersch v. Hendley,
626 S.W.2d 151, 155 (Tex. App.CFort Worth 1981, no writ) (holding defendant physician=s own testimony may establish standard of care).  He further testified that a retroperitoneal
bleed can happen with a femoral artery stick as well as an iliac artery
stick.  He pointed out that Dr. Sudashan=s finding that the puncture site was at Aabout the inguinal ligament@ would indicate that the puncture site was correct, and further
testified that Dr. Walker=s report was
ambiguous in reference to what he repaired and where, referring to the inguinal
Aarea@Ca vast area that covers the groinCrather than Aligament.@  Dr. Thota further pointed out
that Dr. Walker=s operative
report did not describe the Atear@ or how he
repaired it.  Dr. Doherty also admitted
that Dr. Walker=s operative
report stated that he had to divide the inguinal ligament before he could
actually see the site of the tear in the artery.  Dr. Thota testified that, based on that
location of the site of the bleeding, i.e., under the inguinal ligament, the
puncture site for the catheterization was in the correct area.

Both Dr. Thota and Dr.
Doherty testified that, if there had been an improper high stick preventing
adequate hemostasis, Ronnie would likely have developed signs of bleeding
before discharge.  But Ronnie remained
stable and experienced no pain or signs of bleeding after the procedure and for
several hours after his discharge.  Dr.
Thota testified, and even Dr. Doherty acknowledged, that the objective evidence
in the records indicated that Ronnie was not bleeding at the time he was
discharged, from which the jury could reasonably infer that the puncture
location was not improper.





As in many medical
malpractice cases, the record consists of conflicting opinions of experts.  See, e.g., Cruz ex rel. Cruz v. Paso Del
Norte Health Found., 44 S.W.3d 622, 646 (Tex. App.CEl Paso 2001, pet. denied) (holding failure to find nurse negligent
not against overwhelming weight of evidence when opinions of experts for both
parties conflicted); Magee v. Ulrey, 993 S.W.2d 332, 336 (Tex. App.CHouston [14th Dist.] 1999, no pet.) (holding failure to find physician
negligent not against overwhelming weight of evidence when jury could have
believed defense expert); Crawford v. Hope, 898 S.W.2d 937, 942B43 (Tex. App.CAmarillo
1995, writ denied) (noting Abattle of experts@ in suit against physician and holding weight of evidence was for jury
to evaluate and jury=s failure to
find proximate cause not against overwhelming weight of evidence).  In a battle of competing experts, it is the
sole prerogative of the jury to determine the credibility and weight of the
witnesses.  Cruz, 44 S.W.3d at
646.

Because of (1) the ambiguity
of Dr. Walker=s report,
(2) the fact that Dr. Doherty=s opinions were based primarily on that report, and (3) the
conflicting testimony of Dr. Thota and Dr. Doherty based on their respective
interpretations of the report as to whether Dr. Thota did or did not place the
needle and catheter in the wrong location, the jury could reasonably have
resolved the credibility issues by disbelieving Dr. Doherty=s opinions and by believing Dr. Thota=s and could reasonably have found that Appellant failed to carry her
burden of proof on establishing the negligence of Dr. Thota.  Once the jury answered Ano@ that any
negligence of Dr. Thota proximately caused Ronnie=s injury, he was exonerated, and neither a Ayes@ nor a Ano@ answer as
to the contributory negligence of Ronnie could have altered the verdict.  See Alvarado, 897 S.W.2d at 752B53.





Moreover, nothing in the
record Aclearly indicates@ that the jury relied upon the new and independent cause
instruction.  The jury was free to
disbelieve the expert testimony of Dr. Doherty, to accept that of Dr. Thota,
and to conclude that Dr. Thota did not incorrectly place the puncture site for
the catheterization.  We presume that the
jury decided all questions of credibility and conflicts in the evidence in
favor of the verdict if reasonable jurors could have done so.  Torres, 231 S.W.3d at 63B64 (citing City of Keller v. Wilson, 168 S.W.3d 802, 819 (Tex.
2005)).  The jury could reasonably have
found Dr. Thota not negligent without reaching the issue of proximate cause, in
which event the jury would not have relied on the new and independent cause
instruction because that instruction relates only to proximate cause.  See Arguelles v. Kellogg Brown & Root,
Inc., 222 S.W.3d 714, 727 (Tex. App.CHouston [14th Dist.] 2007, no pet.) (noting Anew and independent cause@ is component of proximate cause). 
Additionally, the jury=s answer of Ayes@ as to Ronnie=s
contributory negligence as a proximate cause negates any reliance by the jury
on the instruction.  See Eoff, 811
S.W.2d at 193 (holding new and independent cause instruction contemplates
independent force rather than negligence of parties was responsible for
injuries).  Finally, counsel for Dr.
Thota never even mentioned the instruction in his closing argument.  I would hold there is no indication, much
less any Aclear
indication,@ that the
jury relied on that instruction in reaching its verdict.  See Urista, 211 S.W.3d at 758B59.  Thus, even if there was
charge error, under the proper harm analysis I would hold that the record fails
to establish that any such error probably resulted in an improper
judgment.  See Tex. R. App. P.
44.1(a).  I would affirm the judgment of
the trial court.

 

ANNE GARDNER

JUSTICE 

 

 

DELIVERED:  November 20, 2008











[1]NTCC=s
alleged liability was based solely on respondeat superior. 





[2]The
trial court gave the jury an inferential rebuttal instruction on new and
independent cause and unavoidable accident as to Dr. Thota but only gave Ronnie
an inferential rebuttal instruction on unavoidable accident.





[3]When Kerby
was tried in June 1973, our current system of inquiring into the comparative
fault of the parties had not yet been created; a finding of contributory
negligence on the part of a plaintiff constituted a bar to a plaintiff=s
recovery, unlike an affirmative finding on a mitigation question.  See Tex. R. Civ. P. 277, 493-494
S.W.2d (Tex. Cases) xxxiiBiii
(1973, amended 1987); see also Tex. Workers=
Comp. Comm=n v.
Garcia, 893 S.W.2d 504, 529 (Tex. 1995); cf. Tex. Civ. Prac. &
Rem. Code Ann. ''
33.001B.017
(Vernon 2008).





[4]The
trial court refused Dr. Elbaor=s requested question on Smith=s
contributory negligence and instead instructed the jury Ato
exclude from its verdict any damages attributable to Ms. Smith=s
negligence.  This instruction contained
no definition of negligence upon which the jury could have based its decision.@  Elbaor, 845 S.W.2d at 245.  The instruction read, 

 

Do
not include any amount for any condition resulting from the failure, if any, of
Carole Mercer Smith to have acted as a person of ordinary prudence would have
under the same or similar circumstances in caring for herself and cooperating
in the treatment of her injuries, if any, that resulted from the medical care
made the basis of the lawsuit.

 

Id. at
245 n.8.





[5]Appellees
also placed significant blame on appellant for her failure to assist or insure
that Ronnie returned to the hospital timely; however, appellees did not request
a charge on appellant=s
alleged contributory negligence.  Because
it was not submitted to the jury, we do not consider appellant=s
alleged negligence in our analysis.  See
Barker v. Eckman, 213 S.W.3d 306, 313 (Tex. 2006); Moore v. Kitsmiller,
201 S.W.3d 147, 153 (Tex. App.CTyler 2006, pet. denied).





[6]Appellant=s
brief on appeal opens with an acknowledgment that the jury charge was not
based on the Atear@ to
the external iliac artery, but on the damages that resulted from the injury,
the shock that resulted from the bleed, and the multiple problems that arose as
the result.  Appellant now complains that
the charge was based on the wrong foundation and led to an improper
judgment.  IWe disagree for the reasons
stated above.  Moreover, any complaint on
this ground was waived by Appellant=s failure to object to the
term Ainjury@ in
Jury Question No,. One.





[7]See
also Russell H. McMains, Contribution and Indemnity Problems in Texas
Multi-Party Litigation, 17 ST. MARY=S L.J.
653, 676 - 77 (1986) (noting that the supreme court treated injury-causing
contributory negligence and occurrence-causing contributory negligence
identically in Duncan v. Cessna Aircraft Co., 665 S.W.2d 414, 429 (Tex.
1984), incorporating within the concept of traditional contributory negligence
the negligent failure of a plaintiff to mitigate damages).





[8]Appellant
has not complained that the submission of contributory negligence or the
instruction improperly commingled theories or prevented him from properly
presenting his case on appeal, and neither party has briefed the possible
application of Casteel to this case. 
In effect, the majority is reversing on unassigned error, issues not
raised by the appeal.  See Pat Baker
Co. v. Wilson, 971 S.W.2d 447, 450 (Tex. 1998) (holding it is Aaxiomatic
that an appellate court cannot reverse . . . absent properly assigned
error@).





[9]In Harris
County, the court noted that the Comments to the Pattern Jury Charge have
long recommended that damage elements be submitted Aseparately@ if
there is a substantial doubt as to whether there is evidence to support an
element.  96 S.W.3d at 235; see
PJC 8.02 cmt. (suggesting Ause of a separate answer
line for each element of damages might avoid the need for a new trial if
the appellate court finds that one or more, but not all, of the elements lack
legal or evidentiary support.@) (emphasis added).  Thus, surely Aseparately@ may
mean either separate jury questions or separate answer lines within the same
question.















 [COMMENT1]

Majority opinion by Justice
Livingston; Dissenting opinion by Justice Gardner